DAVID JONES, *Plaintiff in Error*,

*vs.*

SYLVESTER PETTIBONE and STEPHEN HUBBELL,

*Defendants in Error.*

ERROR TO BROWN COUNTY CIRCUIT COURT.

Whether a stream which is meandered by the U. S. Surveyors must be regarded as returned "navigable" by them: Quere?

The effect of the Statute, (Rev. Stat., chap. 34, sec. 1,) is not to declare that meandered streams are navigable in fact, so as to dispense with proof of their navigability, when that fact is to be established, but only that they shall be regarded as navigable to such an extent that no obstruction shall be placed in them without the consent of the legislature.

An act of the legislature authorizing A. and B. to erect a dam across a certain stream abutting on certain lots *owned by them*, confers a right appurtenant to the land, which passes by deed conveying the lands.

An act of the legislature authorizing A. and his associates to erect and maintain a dam across a certain stream of water, grants a franchise which is not limited to the life of A.; is not a mere personal license to A., but extends to his associates, and may pass to his and their legal representatives.

Where lands bordering upon streams of water which are meandered, are surveyed and sold by the United States, the purchaser takes to the thread of the stream; if the stream be navigable, he takes subject to the public easement. The meandered line serves to ascertain the quantity of land, not to define the boundary of the purchase.

This was an action of trespass on the case, commenced in the Circuit Court of Brown County, by the defendants in error against the plaintiff in error. The declaration alleges, that from the first day of January, 1836, and from thence hitherto, the Oconto river, in said county of Brown, was, and has been, and still ought to be, a public, navigable river and common highway, &c., &c. That the said plaintiffs were possessed of a large quantity of lumber on Little river, in said county, and on the said Oconto river, which

lumber the plaintiffs had manufactured at a certain
mill on said Little river, which said mill and lumber
were located above the point on the said Oconto river,
where the obstruction hereinafter mentioned, was
placed. That the natural and only outlet of said
Little river, being the Oconto aforesaid, &c., &c.; yet
the said defendant, well knowing the premises, &c.,
on the first day of May, 1846, &c., erected &c. a cer-
tain dam of the height of eight feet, and extending
across said river, and that he continued the said dam
&c.; and that the said dam obstructed the navigation
of said Oconto river, and thereby prevented the said
plaintiffs from floating down rafts of the said lumber
thereupon safely, by reason of which the aforesaid
premises, the said rafts of lumber, were greatly in-
jured &c. to the amount of one million feet, in the
county aforesaid.

There were two other counts of similar import,
concluding to the damage of plaintiffs two thousand
dollars. The defendant below pleaded the general
issue, and also a further plea, *actio non*, because he
says, by a certain act of the legislative assembly of
the Territory (now State) of Wisconsin, approved
Feb. 16, 1842, entitled "an act to authorize George
Lurwick and his associates to build and maintain a
dam across Oconto river," the said dam was author-
ized to be erected; the plea then states the substance
of the said act, and avers a strict compliance there-
with, and then traces the title to the said dam into
the defendant below. The plea further avers, that
since the completion of the said dam, he has comple-
ted and kept in good repair a sufficient slide or chute,
not less than thirty feet wide, with a fall not exceed-
ing one foot to every ten feet of smooth surface, as is

Dec. Term
1853.

Jones
vs.
Pettibone
and
Hubbell.

required by said act, &c.; concluding with a verification. To which plea the plaintiffs filed a general replication.

The issue thus joined was tried by a jury at the October term of said court, which resulted in a verdict and judgment against the defendant below for the sum of $416.31 and costs. From the bill of exceptions, it appears that the plaintiff below had a mill on Little river, in Brown county, in 1848, '49, '50, '51; that Little river flows into the Oconto; that in the summers of the years aforesaid, the plaintiffs manufactured large quantities of lumber at said mill, which was rafted down the river, and shipped at the mouth of the Oconto, &c.; that there was a dam in these years on the Oconto, about four or five miles below the mouth of Little river, belonging to the defendant; that the dam was six or seven feet high, with a slide or chute.

The plaintiff offered to prove by a number of witnesses, that the slide or chute was insufficient to answer the purposes for which it was intended; that the rafts of the plaintiffs would break in pieces in passing over it, occasioning loss of lumber, and hindrances and delays. The plaintiffs also gave evidence tending to show that previous to the erection of the dam of defendant on the Oconto, the river was navigable for canoes and rafts of a light draught of water.

The plaintiffs also proved by one H. E. Eastman, that George Lurwick is dead; that the Oconto is a meandered stream. On cross examination, witness said that when he examined the Oconto river, he should not have known that it was a meandered stream, but for having seen the maps and field notes.

They also offered in evidence maps of town 28,

north, of range 21 and 22, certified by Alexander Dec. Term 1853.

Jones
vs.
Pettibone
and
Hubbell. Spaulding, register of the U. S. Land Office in Menasha, to show that the Oconto river is a meandered stream; to which the counsel for defendant objected, which objection was overruled by the court, to which ruling the defendant excepted, and the said copies were received in evidence.

The defendant introduced in evidence the act of the legislature of the Territory of Wisconsin, entitled "An Act to authorize George Lurwick and his associates to build and maintain a dam across the Oconto river," approved February 16, 1842.

The defendant further showed a chain of title from George Lurwick down to himself, of lots 6 and 7, of sec. 24, town 28, range 21, together with the dam, privileges and fixtures thereon, and appurtenances.

The defendant also introduced testimony tending to show that the said slide or chute was sufficient for the passage of rafts of lumber, if properly rafted; that rafts could be run over the same without any trouble; that the same was built in compliance with the act of the legislature aforesaid; that the rafts of the plaintiffs were not properly secured nor properly managed.

The evidence being closed, the judge charged the jury, "that if the Oconto river was meandered by the U. S. surveyors, and was so returned, those acts were equivalent to returning it navigable, and our statute declares it a navigable river, and the statute is conclusive upon its navigability; it cannot be controverted by the defendant."

"That whatever rights were secured to George Lurwick he could alien; but such purchase was a distinct piece of property, and would pass to the assignee

DEC. TERM
1853.

Jones
vs.
Pettibone
and
Hubbell.
thereof, and not to the assignee of the land, as appurtenant thereto."

"That George Lurwick took only an estate for life in the franchise granted under the act of 1842, and that the estate terminated at his decease."

"That if the stream was meandered, purchasers on its banks were limited by the line on the river as much as that in the rear."

"That if you (the jury) find for the plaintiff, you will give him interest on the amount from the 12th day of January, 1850."

To all of which rulings of the judge the defendant did severally except. After the evidence had been closed, the defendant requested the court to instruct the jury, that if the jury do not find that the Oconto river was meandered, and returned as navigable by the surveyors of the United States ; also, that if they find that the defendant was owner of lots 6 and 7, in sec. 24, town 28, range 21 east, then the land under the river belonged to him. Which said instructions the judge refused to give ; to which the defendant excepted.

The cause was submitted under the charge of the court, the jury rendered a verdict for the plaintiffs below, and judgment entered thereon, to reverse which this writ of error is brought. A number of errors are assigned by the plaintiff in error, all of which appear in their order in the opinion of the court.

*Collins & Smith*, for the plaintiff in error.

The court below should have required the defendants in error to prove that the Oconto river was in *fact* a navigable river, or had been used as a public

highway, or that the public had enjoyed an easement there. It is not pretended or claimed that, according to the common law definition, the Oconto was, or is, a navigable stream, and the fact, that by maps, &c., it appears to have been meandered, was not evidence for the defendants in error of its navigability. 16 *Ohio R.* 546, *and cases there cited; Starr vs. Child,* 20 *Wend. R.* 158.

Dec. Term
1853.

Jones
vs.
Pettibone
and
Hubbell.

The statute of Wisconsin, (passed since the erection of defendant's dam, and there was statute before,) does not declare this river navigable only for certain purposes, and then it must be returned as navigable. *Statute, ch.* 34, *p.* 248.

The legislature cannot, by enactment declaring certain streams navigable, that are not so in fact, make them so, to the prejudice of the riparian proprietors ; but for many purposes, not interfering with riparian rights, may make them so. 16 *Ohio R.* 546. To belong to the public, a stream must be navigable in fact. 20 *Wend.* 158.

If the Oconto river was not navigable, in the technical sense of the term, and had not been used as a public highway prior to the building of the dam of the plaintiff in error, then the defendant in error was not entitled to his action. *Spring vs. Russell,* 7 *Greenleaf,* 290 ; 3 *Ohio,* 496 ; 13 *Wend.* 355, 371 ; 2 *Dane R.* 696.

A grant or conveyance of land, on a stream not navigable by the common law, without any reservation, carries with it title to the center or thread of the stream ; and this title the plaintiff in error had. *Com's Canal Land vs. Kemper,* 26 *Wend.* 404 ; 6 *Cowen's R.* 549 ; *Hays vs. Bowman,* 1 *Rand R.* 417 ; 3 *Kent R.* 427–433 ; 5 *Wend.* 423 ; *Mayo vs. Quim-*

DEC. TERM
1853.

Jones
vs.
Pettibone
and
Hubbell.

by, 3 *Dana*, 4 ; 7 *Mass.* 406 ; 17 *Mass.* 289 ; 20
*Wend.* 149.

Plaintiff in error had such right over the Oconto,
it not being navigable, and he having appropriated it
to that use, might and can maintain trespass for injury
to his dam. *Berry vs. Earll*, 3 *Greenleaf*, 269 ; *id.*
1ʹ4 ; *Bradley vs. Rice*, 13 *Maine*, 201 ; *Mariner vs.
Southworth*, 6 *Cowen*, 471 ; *Starr vs. Child*, 20 *Wendell*, 149.

By the act of 1842, George Lurwick took a franchise, which was an appurtenant to, and passed with,
the fee of the land. *Laws of '42, p.* 84.

The right of Lurwick in this franchise descended
to the plaintiff in error, upon the · principle that if a
grant admits of two constructions, one valuable to
the grantee and the other not, the more favorable one
to the grantee shall prevail. 11 *Peters*, 589.

The court below should have instructed the jury,
" that if the jury do not find that the Oconto river
was meandered and RETURNED AS NAVIGABLE by the
surveyors of the U. S.," the plaintiffs could not recover.

The court should have charged the jury, that if
they found from the testimony that Jones was the
owner of lots 6 and 7, on which the dam abutted,
then the land under the water belonged to him.

*J. C. Truesdell*, for the defendant in error.

There was no error in allowing the certified copies
of the township maps to be read in evidence, to show
that the Oconto river was a meandered stream. *Cow.
& Hill, note to Phil. Ev.* 1163 ; 4 *Peters*, 332 ; 1
*Greenl. Ev.* 483, 484.

The whole evidence in the case tends to show that

the Oconto river is in fact a navigable stream, and there was sufficient proof of the meandering thereof, aside from the maps given in evidence. *R. S.* 248.

The right to dam or obstruct a meandered stream, is not appurtenant to the land bounded thereon; hence Lurwick applied to the legislature, who gave him that right, without words of perpetuity in the grant. He therefore took only a life estate thereby. 2 *Greenl. Cruise Dig.* 354, 366 ; 4 *Kent's Com.* 24 ; 2 *McLean,* 893 ; 17 *Mass.* 443.

The court will allow a remittitur for excess of interest. 1 *H. Black.* 642 ; 1 *Yates,* 186 ; 2 *Dall.* 184 ; 12 *Bar.* 492.

*By the Court,* WHITON, C. J. The bill of exceptions in this case shows that various exceptions were taken to the ruling of the judge at the trial, in regard to the admissibility of testimony, and in regard to his instructions to the jury.

It appears that one George Lurwick and his associates were authorized by an act of the legislature to build a dam across the Oconto river, at the place where the one owned by the plaintiffs in error is situated. The act was passed on the 16th of February, A. D. 1842, and authorizes Lurwick and his associates to build a dam across the river on lots six and seven, section twenty-four, in township twenty-eight, range twenty-one east, " on lands owned by himself or his associates, sufficient to make and create a head of seven feet." It appears that the plaintiff in error introduced testimony to prove that he was the owner of the lots in question, (having obtained them by purchase,) and claimed the right to keep up the dam by virtue of the act.

Dec. Term
1853.

Jones
vs.
Pettibone
and
Hubbell.
The plaintiff in error assigns the following errors:

1st. "The court erred in allowing the plaintiff below to give in evidence copies of maps of town 28, of ranges 21 and 22, to show that the Oconto river was a meandered stream."

2d. The court erred in charging the jury that the said several matters produced and given in evidence on the part of the defendant below, were not sufficient, and ought not to be admitted and allowed as decisive evidence to entitle the said defendant to a verdict, and to bar the said plaintiffs below in their action."

3d. "The court erred in charging the jury that if the Oconto river was meandered by the United States surveyors, and was so returned, those acts were equivalent to returning it navigable, and our statute declares it a navigable river, and the statute is conclusive upon its navigability; it cannot be controverted by the defendant."

4th. "The court erred in charging the jury that whatever rights were secured to George Lurwick, he could alien, but such purchase was a distinct piece of property, and would pass to the assignee thereof, and not to the assignee of the land, as appurtenant thereto."

5th. "The court erred in charging the jury that 'George Lurwick took only an estate for life in the franchise granted under the act of 1842, and that the estate terminated at his decease.'"

6th. "The court erred in charging the jury that 'if the stream was meandered, purchasers on its banks were limited by the line on the river as much as that in the rear.'"

7th. "The court erred in charging the jury, 'If you

find for the plaintiff, you will give him interest on the amount from January 12, 1852.'"

8th. "The court erred in refusing to charge the jury as asked by the defendant's counsel, 'That if the jury do not find that the Oconto river was meandered and returned as navigable by the surveyors of the United States, the plaintiff cannot recover.'"

9th. "The court erred in refusing to charge the jury as asked by defendant's counsel, 'That if the jury do find that the defendant was the owner of lots 6 and 7, in section 24, town 28, range 21 east, then the land under the river belonged to him.'"

Very few of the matters assigned for error were at all discussed at the argument, and we shall not express any opinion in relation to some of them, confining our attention to those which have the most important bearing upon the case.

We think the court erred in the instructions which it gave to the jury in relation to the effect of meandering the stream by the United States surveyors, and which are set out in the third assignment of error. The statute alluded to (*Rev. Stat. ch.* 34, *sec.* 1) in the charge of the judge, is as follows:

"All rivers and streams of water in this State, in all places where they have been meandered, and returned as navigable by the surveyors employed by the United States Government, are hereby declared navigable to such an extent that no dam, bridge, or other obstruction may be made in or over the same, without permission of the legislature."

Without deciding whether a stream which is meandered by the surveyors, must also be regarded as returned "navigable" by them, we think the act of the legislature in question does not warrant the con-

Dec. Term
1853.

Jones
vs.
Pettibone
and
Hubbell.

struction placed upon it by the judge. The act does not provide that streams of this description shall be regarded as navigable in fact, so as to dispense with proof of their navigability, when that fact is to be established, but only that they shall be regarded as navigable to such an extent that no obstruction shall be placed in them without permission of the legislature. In other words, the act prohibits the placing of obstructions in such streams without permission of the legislature; but it does no more. We also think that the judge erred in the instructions which he gave to the jury, as set out in the fourth assignment of errors. The substance of his instructions upon this subject was, that the right of Lurwick and his associates to build and maintain the dam would not pass to the grantee of the land, as appurtenant to it, but was separate and distinct property. It is apparent from the phraseology of the act, that the legislature did not intend to grant to Lurwick and his associates the right to build the dam upon land owned by other persons. On the contrary, the right to build it on lots 6 and 7 was conferred upon the persons named in the act, upon the supposition that they, or some one or more of them, owned the land; the words, " on lands owned by him or his associates," which follow the grant of the right to build on lots 6 and 7, qualify the right so as to make it essential that Lurwick or his associates should own the lots in question in order to make the grant operative. The correctness of this view of the question is made more apparent by a reference to the third section of the act, which provides " that the general law, approved January 13th, 1840, relating to mills and mill-dams, shall be, and hereby is, declared to be applicable to any

dam which may be constructed by virtue of this act." Dec. Term 1853.

Jones
*vs.*
Pettibone
and
Hubbell.

The act of 1840 referred to, while it authorizes, upon certain conditions, the flowing of lands not belonging to the persons who caused the flowing, did not authorize the erection of dams without permission, upon any land not owned by the persons erecting them. *Sess. Laws* 1840, *p.* 65, *sec.* 2.

It seems quite clear, then, that the right granted to Lurwick and his associates, was the right or power to erect the dam on lots 6 and 7, as the owners of the lots. It was not a personal privilege, but was a right which was conferred upon them as the proprietors of the land, and because appendant or appurtenant to the land. *Co. Litt.* 121, *b.*; 1 *Vent.* 386 ; 4 *Kent's Comm.* 467.

We are also of opinion that the court erred in charging the jury that Lurwick took only an estate for life, in the franchise granted by the act of 1842, and that it terminated at his decease, as is set forth in the fifth assignment of error. We do not see how the grant could terminate with the death of Lurwick, as there is nothing in the act to indicate that the right was to continue only for the joint lives of himself and his associates, which must be the case, if the right to keep up the dam terminated with his life. The grant was to him and his associates, and if his death would terminate it, so also would the death of either of the associates.

We also think that the court erred in charging the jury, that if the stream was meandered, purchasers on its banks were bounded by the line run along the bank, as set forth in the sixth assignment of error. The general doctrine, that purchasers of lands lying on the banks of a stream, above the ebb and flow of

Dec. Term
1853.

Jones
vs.
Pettibone
and
Hubbell.

the tide, when bounded by the stream, take to its center or thread, cannot be disputed; but in this case it may be contended that, by the manner in which the land is surveyed and sold by the United States, the purchaser does not purchase to the stream in fact, and is not bounded by it, but that he is bounded by the line run along the margin of the river, called the meandered line. But this line is not the boundary of the lot, and is run merely to determine the quantity of land contained in it. We are of opinion, therefore, that the lots extended to the stream, and of course to its center. *Middleton vs. Pritchard et al.*, 3 *Scamm. R.* 510 ; *Canal Trustees vs. Haven*, 5 *Gill. R.* 548.

We are also of opinion that the court erred in refusing to charge the jury, when requested by the defendant's counsel, that if they found that lots 6 and 7 belonged to the defendants, then the land under the river belonged to them. These lots, being situated opposite each other, on opposite sides of the Oconto river, it would seem to follow, from our opinion upon the matters assigned for error in the sixth assignment of errors, that the instruction asked for should have been given. The doctrine we suppose to be well established, that persons who are bounded by the center or thread of the stream, own the land under the stream, to their boundary. If the stream is navigable in fact, the public have the right to use it for the purposes of navigation, and the right of the owner is subject to the public easement. But, with this exception, the right of the owner to use the land as he pleases, is perfect.

We have intentionally omitted to express any opinion upon many of the questions presented by the record, for the reason that they were not discussed at

the argument of the case.   We regret that the coun-
sel for the defendants in  error  did  not participate in
the discussion.

For the reasons above given, the judgment must be
reversed, and a new trial ordered.