## Case No. 17,978.

### WOODMAN v. KILBOURN MANUF'G CO.

[1 Abb. (U. S.) 158; 1 Biss. 546; 6 Am. Law Reg. (N. S.) 238.] [1]

Circuit Court, D. Wisconsin. Jan. Term, 1867.

ORDINANCE OF 1787—POWER OF CONGRESS TO REGULATE COMMERCE—NAVIGABLE STREAMS.

1. The ordinance of 1787, for the government of the Northwest Territory, has been superseded by the adoption of the constitution of the United States, and the admission to the Union of the states formed from that territory; and the provision of the ordinance declaring the navigable waters leading into the Mississippi and the Saint Lawrence "common highways and forever free," does not restrict the powers of congress, or of the states, to legislate respecting those waters.

2. In the absence of any conflicting enactment by congress relative to the use of a navigable stream, the state within which such stream lies has power to legislate respecting it.

3. The right of the public to use a navigable river as a highway, is paramount to every other use of the water; but it does not exclude or forbid the legislature of the state (where no con-

[1] [Reported by Benjamin Vaughan Abbott, Esq., and James H. Bissell, Esq., and here compiled and reprinted by permission. The syllabus and opinion are reprinted from 1 Abb. (U. S.) 158, and the statement from 1 Biss. 546.]

flicting enactment by congress exists) from authorizing the construction of public improvements upon the stream, although they may involve a partial obstruction or inconsiderable detention to navigation.

[Cited in Benjamin v. Manistee R. Imp. Co., 42 Mich. 634, 4 N. W. 486.]

4. Under the constitution and laws of Wisconsin, any obstruction to the use of a navigable stream by the public for purposes of navigation, which is erected without a constitutional legislative authority, is a nuisance, and liable to be abated either at the suit of an individual or at the instance of the state.

[Cited in Ladd v. Foster, 31 Fed. 834.]

[This was a bill by one Woodman against the Kilbourn Manufacturing Company to enjoin it from constructing a dam across the Wisconsin river.

[I. Holmes, for complainant, cited Davis v. Mayor, etc., of New York, 14 N. Y. 526; 2 Story, Eq. Jur. § 927; Trustees of Watertown v. Cowen, 4 Paige, 510; Corning v. Lowerre, 6 Johns. Ch. 439; Brown v. Chadbourne, 31 Me. 9; Moore v. Sanborne, 1 Gibbs, 519; Morgan v. King, 35 N. Y. 454.

[G. W. Lakin, also for complainant, cited City of Georgetown v. Alexandria Canal Co., 12 Pet. [37 U. S.] 94; Crowder v. Tinkler, 19 Ves. 617; Irwin v. Dixon, 9 How. [50 U. S.] 25; 2 Story, Eq. Jur. §§ 921–924; 9 Stat. 83, land grant to improve Fox and Wisconsin rivers; act of Wisconsin (Sess. Laws 1846, p. 16) accepting the grant; act of same session (p. 58) to provide for the improvement, etc.; memorial of legislature of Wisconsin territory approved January 20, 1846, to congress; Sess. Laws 1846, p. 229; memorial of legislature of Wisconsin to congress, approved December 18, 1843; appendix to Sess. Laws 1844; article 4 of ordinance of 1786; Laws 1839. Wis. T. p. 18; article 9, § 1, of the constitution of Wisconsin incorporating the same provision in the same language (Rev. St. Wis. 1858, c. 1, § 1, enacts the same); Pennsylvania v. Wheeling & B. Bridge Co., 9 How. [50 U. S.] 647, etc.; 13 How. [54 U. S.] 518; The Hine v. Trevor, 4 Wall. [71 U. S.] 555 (asserts the broad doctrine that the principles of admiralty jurisdiction, as conferred on the federal courts by the constitution, extend wherever ships float and navigation successfully aids commerce, whether internal or external); The Moses Taylor, Id. 411; The Genesee Chief, 12 How. [53 U. S.] 457; Jackson v. The Magnolia, 20 How. [61 U. S.] 296.] [2]

Finches, Lynde & Miller, for defendants.

MILLER, District Judge. It is alleged and charged in the bill, that the Wisconsin is one of the navigable rivers leading into the Mississippi river, and a common highway, free to be navigated and used as such highway by complainant and all other citizens of the United States. That said river is navigable from its source to its mouth, and

capable of being used for rafting and for driving lumber, and also for steamboat navigation; and that it runs through a district of pine lands lying above the town of Newport. That the owners of said lands, including complainant, annually raft down said river large quantities of lumber and logs to saw mills and to market; and that they are dependent upon the unobstructed use of the river in this employment. The bill further charges, that in 1859 a dam was constructed in said river at the town of Newport, by a chartered company, for hydraulic purposes, which being an obstruction to navigation, was partly removed. And that the company defendant are building a dam at the same place, using a portion of the old dam; and that this company are doing so under color or in pursuance of an act of the state legislature, entitled "An act to aid in the development of manufacturing interests in this state," approved April 10, 1866, as follows: "The Kilbourn Manufacturing Company, whenever organized in pursuance of any law in this state, shall have power, and said company is hereby authorized to complete the water power in sections three, four, nine, and ten in township thirteen north, of range six east, in the counties of Columbia and Sauk, by raising the dam sufficient height for that purpose, not exceeding three feet above the usual low water mark in the Wisconsin river, and so forming the same that rafts of lumber can pass safely and conveniently, without hindrance or delay." The bill then charges that it is physically impossible to build a dam at that point, the town of Newport, in such form as that rafts of lumber can pass safely or conveniently, or without hindrance or delay; and that such dam would wholly obstruct the navigation of the river by steamboats and other vessels; and will entirely obstruct navigation up stream; and that the structure, as at present towards completion, has obstructed free passage to rafts, and caused to the owners thereof delay and damage. It is further charged, that the act authorizing the construction of the dam is contrary to the ordinance of 1787, the constitution and laws of the United States, and of this state. Defendants Anderson and Kilbourn are alleged to be agents of the company defendant in the work of building the dam. The bill prays an injunction restraining defendants from further proceeding in the building of the dam; and that at the final hearing the dam may be decreed to be abated as a common nuisance.

Affidavits read on the part of complainant sustain the charges in the bill in regard to the obstruction of navigation by the proposed dam. Those on the part of defendants state that the dam will be an improvement to navigation at that point. It does not satisfactorily appear that the river above the site of the dam is navigable for steamboats employed in the ordinary business of commerce. It is conceded that rafts of logs

---

[2] [From 1 Biss. 546.]

and lumber can be floated down stream from several miles above the dam.

The ordinance of the confederate congress, for the government of the territory of the United States northwest of the river Ohio, adopted July 14, 1787, created a temporary government; and also contained six articles, "to be considered as articles of compact between the original states and the people and states in said territory, and forever remain unalterable, unless by common consent." After the adoption of the constitution of the United States, an act of congress, passed August 7, 1789 (1 Stat. 50), continued the ordinance in force, and modified it in conformity to the conditions of the constitution, so far as it related to the temporary government of the territory.

That portion of the ordinance referred to in the bill is: "The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free as well to the inhabitants of said territory as to the citizens of the United States, and those of any other states that may be admitted into the confederacy, without any tax, impost, or duty therefor." The constitution of the United States, subsequently adopted, contains the provision that "new states may be admitted by the congress into this Union," which implies that new states shall be admitted into the Union on an equality with the original states. The ordinance directs that the territory may be divided into not less than three nor more than five states; but the territory has been divided into six states, including that portion of Minnesota east of the Mississippi river. The ordinance further directs, that in case of a division into five states, one boundary shall be an east and west line drawn through the southerly bend or extreme of Lake Michigan, which we know to have been entirely disregarded by congress in the acts admitting new states. If the ordinance were obligatory in every particular, and not altered by common consent, nor superseded by the constitution of the United States, the states embraced within the Northwest Territory could not have been admitted into the Union on an equality with the other states, which is a fundamental principle of the constitution, the basis of this Union. Each new state presented its constitution to the consideration of congress, with its application for admission into the Union under the federal constitution. Congress, composed of members from the original states, approved the constitution of the new state thus presented, and passed an act for its admission into the Union. By the act of congress admitting the new state upon its application, the several articles of the compact were not merely altered by the common consent required in the ordinance, but were superseded. "Whatever may have been the force accorded to the ordinance at the period of its enactment, its authority and effect ceased, and yielded to the paramount authority of the constitution of the United States from the time of its adoption." Pollard v. Hagan, 3 How. [44 U. S.] 212; Parmalee v. First Municipality of New Orleans, Id. 589; Strader v. Graham, 10 How. [51 U. S.] 82; Dred Scott v. Sandford, 19 How. [60 U. S.] 393, 490–492. It therefore follows that the act of the legislature authorizing the construction of the dam in question is not prohibited by the ordinance.

The general government, under the constitutional power of congress "to regulate commerce among the several states," has done no act prohibiting or interfering with this state in regulating the navigation of the Wisconsin river. No act of congress has been passed upon the subject of commerce on that river, which includes the navigation. Nor have boats or vessels been licensed, nor ports of entry established on said river by federal authority. The Wisconsin river being a domestic stream, rising, running, and emptying into the Mississippi river within the state, local legislation is unrestricted by federal authority, unless it is in conflict with the navigation laws, or some other enactments of congress. In the absence of action on the part of the United States in regard to the navigation of the river, as a stream bearing a necessary relation to commerce among the several states, the power of the legislature, under the state constitution, to pass the act authorizing the construction of the dam in question, is the next subject for consideration.

The Wisconsin river is a meandered stream according to the government survey of public lands. Although it is not navigable in its unimproved condition above the site of the dam for steamboats navigating the Mississippi river, yet it is navigable in the common sense of the term. The soil or bed of the river is not granted to riparian purchasers usque ad filum, but the body of the stream is reserved to the public. The river is therefore open and free to all persons for purposes of navigation; not a personal right, but subject to governmental authority. The right to unobstructed navigation of the river is to be regarded as a clear and undoubted right, paramount to every other use of the water. It is an inherent paramount right of the people, but not exclusive of a partial obstruction or inconsiderable detention by a dam constructed in pursuance of governmental authority for the development of the country, for the accommodation of public necessities, or of commerce, or travel upon the land. Partial diminution of the navigability of a stream for these purposes, unless restrained by the superior legislation or authority of the general government, has been within the established power of the states since the formation of the government. In the case of Wilson v. Blackbird Creek Marsh Co., 2 Pet. [27 U. S.] 245, it appears that the

creek was a navigable stream flowing into the Delaware river; and that the legislature of the state of Delaware passed an act empowering the company to build a dam in said creek for the purpose of excluding the water from the surrounding marsh, and thereby enhancing the value of the property on its banks and probably improving the health of the inhabitants. The dam was a total obstruction of navigation. The court decided that the measure authorized by the act stops a navigable stream, and must be supposed to abridge the rights of those accustomed to use it. But this abridgment, unless it comes in conflict with the constitution or a law of the United States, is an affair between the government of the state of Delaware and its citizens. In Martin v. Waddle, 16 Pet. [41 U. S.] 410, the court say: "When the Revolution took place, the people of each state became themselves sovereign, and in that character held the absolute right to all the navigable waters and the soil under them for their own common use, subject only to the rights surrendered by the constitution of the general government." The admission of the new states into the Union on an equality with the original states gives them the same absolute rights, notwithstanding the title to the soil was originally in the United States. Pollard v. Hagan, 3 How. [44 U. S.] 212. See. also, Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1; Pennsylvania v. Wheeling & B. Bridge Co., 13 How. [54 U. S.] 519, and 18 How. [59 U. S.] 421, 430, 432; Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713; and the opinion of Grier, J., in the Passaic Bridge Case, Id. 782.

It cannot be claimed that the complainant, a citizen of the state of Massachusetts, has a right to the navigation or use of the Wisconsin river superior to that of the inhabitants of the state. By the federal constitution "the citizens of each state shall be entitled to all privileges and immunities of citizens of the several states."

It is claimed, on the part of the complainant, that the act authorizing the construction of the dam in question is repugnant to the provision in article 9 of the state constitution, that "the navigable waters leading into the Mississippi and the St. Lawrence, and the carrying places between the same, shall be common highways, and forever free as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost, or duty therefor." This article was incorporated into the constitution from the ordinance of 1787. The navigable waters, such as the Wisconsin river, running into the Mississippi river, shall be common highways, and their navigation, to the extent of their navigable capacity, cannot be materially obstructed. Such rivers may be considered navigable waters without any such constitutional provision, as congress has the power to regulate commerce between the states, which includes the navigation of navigable streams. The paramount right of navigation being in the people who may wish to use a navigable stream, any obstruction, however inconsiderable, without constitutional legislative authority, is a nuisance, to be abated at the suit of an individual or of the state.

This principle is prescribed in a general law of the state, "that all rivers and streams of water in this state, in all places where the same have been meandered and returned as navigable by the surveyors employed by the United States government, be declared navigable to such an extent that no dam, bridge, or other obstruction may be made in or over the same without the permission of the legislature." This law establishes by statute the inherent common law right of the legislature to investigate and ascertain the extent of the navigability of streams, and of the kind of proposed partial obstructions to navigation, for the general convenience and use of the people. In the Case of the Blackbird Creek, in the state of Delaware, navigation was totally obstructed by the dam built in pursuance of a legislative act; but whether such an obstruction could be built in one of the navigable streams of Wisconsin, this case does not require a decision. It is very clear that neither in Delaware nor in Wisconsin can even a partial obstruction be made without governmental authority. The legislature has the power to inquire into the necessity for a structure, such as a bridge or dam, over or in a navigable stream, and to prescribe the conditions and plans upon which the proposed improvement may be made. It is also the province of the legislature to inquire into the navigability of a stream and the uses to which surplus waters may be applied. The navigability of the stream is the subject of proof. The return of the surveyors, showing a stream to have been meandered, is not conclusive. Jones v. Pettibone, 2 Wis. 308. That case announced the principle that the effect of the statute is not to declare that meandered streams are navigable in fact, so as to dispense with proof of their navigability, when the fact is to be established, but only that they shall be regarded as navigable to such an extent that no obstruction shall be placed in them without the consent of the legislature. The statute declares that the legislature possesses the exclusive power to direct and control the municipal policy of the state in regard to improvements and partial obstructions of navigable streams. The constitutional provision is a declaration of a principle inherent in a sovereign state of the Union, and the statute is notice of such power.

It is not for an individual, but for the state to decide whether the whole of a public highway is necessary for the public accommodation or not; hence any partial obstruction of any navigable stream or highway,

or any portion of it, without legislative authority, is a nuisance. The public have a right to the use of the entire highway; and no citizen can appropriate a portion, upon the principle that enough remains for public use. The legislature is no judge of that. The act authorizing the construction of the dam in question is in the nature of a public grant of the use of surplus water of the river for the improvement and development of the country, and for the accommodation of the people in the vicinity. In making this grant, the legislature probably were influenced by the consideration that the man who builds a mill or manufactory in a new country is a public benefactor. See People v. City of St. Louis, 5 Gilman, 351; Hart v. Mayor of Albany, 9 Wend. 571; La Plaisance Bay Harbor Co. v. City of Monroe, Walk. [Mich.] 155; Flanagan v. City of Philadelphia, 6 Wright [42 Pa. St.] 218. Several acts have been passed by the state legislature, from time to time, authorizing the construction of dams in meandered rivers, upon such plans, or in such forms, that rafts of lumber can pass safely and conveniently, without hindrance or delay. Such acts were also passed by the territorial legislature while the ordinance was considered in force in the territory. I have come to the conclusion that the act authorizing the construction of the dam in question is within the constitutional power of the legislature.

The bill complains of a prospective abridgment of complainant's right to the free navigation of the river. He has not been injured by the dam at present in process of construction. Defendants must be allowed a reasonable time to construct the dam, not exceeding three feet in height above low water mark, and in such form as rafts of lumber can pass safely and conveniently without hindrance or delay, according to the act. The work cannot be restrained by injunction, upon the theory that no dam can be constructed at that point that will not obstruct the navigable use of the river. The legislature have authorized defendants to make the experiment, if a dam can be constructed as required by the act, and the court will permit the practical test to be applied. If the speculations of complainant's bill should be realized, and defendants' efforts prove unsuccessful, the dam will have to be abated at their costs. Mere theoretical opinions are not sufficient in law for enjoining the progress of a work in the nature of a public improvement authorized by a legislative act.

If a dam shall be constructed according to the requirements of the act, the paramount right of those navigating the river with rafts of lumber is satisfied. They cannot complain if the dam should detain their rafts a few minutes, or should require caution in passing through or over it. The only question on final hearing will be whether the dam not exceeding three feet above the low water mark is so constructed that, with proper care and caution, "rafts of lumber can pass safely and conveniently without hindrance or delay." Since the year 1838 a dam with a lock for ascending and descending trade has stood in the Fox river, at Depere, in this state. The time required for passing the lock is no hindrance or delay. In the year 1840 a bill was brought before me, as territorial judge, to restrain the erection of a bridge over the Milwaukee river at Milwaukee, which is at that place an arm of the lake, navigable for all classes of boats and vessels. Being satisfied that the bridge was to be built with a draw, which could be opened or closed in fifteen or twenty minutes, I considered that the interests of commerce must submit to an inconsiderable delay or inconvenience for the accommodation and necessity of the people, and dismissed the bill. Since that day bridges with draws have been constructed, in pursuance of legislative acts, over almost every river in the land. Dams, too, are built by the same authority in navigable streams, with locks or sluices, for the accommodation of the whole people.

The injunction prayed for is refused.

NOTE [from 1 Biss. 546]. At the September term, 1868, this case came on for final hearing, upon the pleadings and proofs, before Justice Davis and District Judge Miller, and the bill was dismissed. As to enjoining a public work, see case of Hartford Fire Ins. Co. v. City of Chicago [unreported]. The United States may enjoin a work of internal improvement conducted by state authority, if it interferes with improvements on navigable waters made by authority of congress. In such case the power of the federal government is exclusive. U. S. v. Duluth [Case No. 15,001]. See, also, Pennsylvania v. Wheeling & B. Bridge Co., 18 How. [59 U. S.] 421; Conway v. Taylor's Ex'r, 1 Black [66 U. S.] 603; Mississippi & M. R. Co. v. Ward, 2 Black [67 U. S.] 485; Gilman v. Philadelphia, 3 Wall. [70 U. S.] 713.