June Term, 1860.

MARINER
v.
SCHULTE.

## MARINER vs. SCHULTE.

Purchasers of land lying on the bank of a stream, above the ebb and flow of the tide, and bounded by the stream, are presumed to own to the center of the stream, unless there is something in the language of the grant to restrict that right and to reserve the bed of the stream adjoining the land.

The decision in *Kimball vs. The City of Kenosha,* 4 Wis., 321, that a grantee of a lot bounded by a street in a village laid out, platted and recorded in conformity to the statute in force in 1837, takes to the center of the street on which the lot abuts, subject to the public easement, is referred to and approved.

The original proprietors of part of the present city of Milwaukee sold lots, describing them by their *numbers* only, which were delineated on a town plat recorded in 1837, as reaching to the east side of a *bayou* of the *Milwaukee* river. On the west side of the bayou, a street called River street was delin-

eated on the plat as running along the edge of the bayou, and partly covered by it, so as to leave no space intervening between them; and west of that street, on the island between the bayou and the Milwaukee river, the ground was platted into lots, abutting on River street, and sold. Subsequently the bayou was filled up by order of the city authorities, as a nuisance to the public health. *Held*, that the proprietors must have intended to convey all their interest in the space covered by the bayou and River street, to the adjoining lot owners, in such manner as most effectually to secure their rights; and in view of the fact that the bayou was a navigable stream, and thus two highways were laid out side by side, on which the lots on the mainland and the island abutted, they must reasonably have intended that the boundary between those lots should be the east line of River street, in order to secure the right of all parties to a public highway, in the event that one or the other should, in time, be discontinued.

June Term, 1860.

MARINER
v.
SCHULTE.

Proprietors of land on the shore of a pond or lake hold down to *low* water mark.

APPEAL from the Circuit Court for *Milwaukee* County. Ejectment for the piece of ground in the city of Milwaukee,

lying in front of lots 4 and 5 in block 51, and between those lots and the east side of River street, as indicated on the above plat.

On the trial, the plaintiff deduced his title, through seve-
ral mesne conveyances, from Wells & White, who derived
their title to the premises in controversy, under a *quit-claim*
deed from Juneau, (who was the patentee of the quarter sec-
tion in which the premises are situated,) dated November 2d,
and recorded November 5th, 1849.   This deed declared
that it was the intention of the grantor to convey all his
interest` in that piece of land commonly known as the
"bayou," in the 1st ward of the city of Milwaukee.   It was
admitted that the defendant was in possession of all the land
between a line extended at right angles with East Water
street, from the north-east corner of lot 4, in block 51, to
River street, and a line extended in the same manner from
the south-east corner of lot 5, in the same block, to River
street; and the plaintiff proved "that the west part of the
land between those lines was covered by a portion of the
said 'bayou,' in low water, before the said 'bayou' was
filled up, and that the 'bayou' had been filled up, and the
shores thereof obliterated, before the commencement of this
action," and rested.

The defendant deduced a title to said lots 4 and 5, in
block 51, through a deed from the patentee, dated and re-
corded October 4th, 1836.

He also gave in evidence a town plat made and recorded
September 8th, 1835, by Juneau & Martin (Martin being
then a co-proprietor), and a similar plat made by them and
acknowledged in August, 1837, a section of which, em-
bracing the ground in controversy and adjacent lots, streets,
&c., is represented, with sufficient accuracy, by the above
diagram.   It was also admitted by the parties, " that Juneau
& Martin had conveyed their entire interest in block 50,
according to said plats, lying on the west side of River
street, directly west of block 51, and opposite thereto, across
the 'bayou,' and beyond River street, *prior* to the deed
made by Juneau to White & Wells."

The defendant then introduced evidence tending to show
that at the time said plats were made, and the lots sold, the
"bayou" was a water-course (and not a pond), and was nav-
igable, in point of fact, in its natural condition, in front of

lots 4 and 5, in block 51; and that River street, as laid down on the plats, lay partly in the water of the " bayou," or immediately adjoining it, with no space between them; and that Juneau & Martin, when they platted the ground, and sold the lots around the " bayou," intended to dedicate the " bayou" to the public use, by leaving it open as a highway by water; and that during the years 1856–7–8, the " bayou" was filled up, under the direction of the proper authorities of the city, as a nuisance to the public health.    To prove the intention of the proprietors in respect to the dedication of the " bayou" to public use, the defendant's counsel put to a witness, who said he had bought of Juneau, in 1848, lots in block 47, on the island, the following question: " State any representations made to you by Juneau and Martin, at the time you bought the lots in block 47, about the bayou ?" The question was objected to by the plaintiff, but the court overruled the objection, the plaintiff excepting, and the witness answered, " I bought of Juneau first; I asked him about the bayou; he stated it was left open as a navigable stream, and that so the lots had a double water front, one on the river, and one on the bayou.    He stated that the lots on River street would be worth more on account of the two water fronts.    These statements were made during the negotiations for their purchase.    I afterwards purchased of Martin lots 1, 2, and 3, in the same block, and he made the same statements in regard to their having a double water front, and represented the lots as being worth more on that account."    The plaintiff then introduced evidence tending to show that there was a lunar tide in Lake Michigan, of about an inch and three-eighths to two inches, occurring periodically, and at the same periods as the ocean tide; that it extended up the bayou above the ground in dispute, but that the fluctuations in the waters of the lake, occasioned by the winds, are so much greater than that caused by the tide, that it was difficult to detect the latter, without making a series of observations for that purpose.    There was also evidence tending to show that the *plat* represents the bayou narrower than it really was; and that what is represented as

River street was encroached on more by the bayou than is indicated by the plat.

The plaintiff requested the court to charge the jury, 1. That if they found that the tide ebbs and flows in Lake Michigan, and that such ebb and flow extended up the Milwaukee River and the bayou, over the lots in question, or propelled back the waters of the river and bayou above the lots in question, then the plaintiff was entitled to recover the premises as far back as ordinary high water mark on the east side of the bayou, before any part of the premises were filled. 2. In case the jury found there is no tide in Lake Michigan or in the Milwaukee River, and the water in the bayou had been stagnant except when moved by the influx of the river, or from the river overflowing its banks, that then the plaintiff was entitled to recover up to low water mark on the east side of the bayou, before any filling was done. 3. That the plaintiff was entitled to recover that part of the premises to which the defendant did not show title; that after the case made by the plaintiff, the burden was upon the defendant to make his title, and that the plaintiff was entitled to all to which the defendant did not prove title. 4. That the occupation of the bayou by the public, either under the dedication by Juneau & Martin, under the plat, or under the right to it as technically navigable, was not adverse to the title of the owner of the fee, or inconsistent with the reversion, when the public use ceased. These instructions were each refused, and the refusal excepted to.

The court, at the request of the defendant, instructed the jury: 1. That if the jury found from the evidence that the bayou was a water course and not a pond, and was navigable in point of fact, in front of lots 4 and 5, in block 51, in its natural condition, then it was by law a public highway, and the owners of the land on the banks owned also the land under the water, subject only to the public easement or right of passage. 2. If the bayou was in fact a highway, as described in the last instruction, and if River street lay partly in the water of the bayou, or immediately adjoining it, with no space between them, then the whole space occupied by River street and the bayou, was an entire highway, and the

owners of the lots on the east side of the bayou owned also to the centre of this entire highway, at the least. 3. That if they found from the evidence, that Juneau and Martin, when they platted the ground and sold and conveyed the lots around the bayou, intended to dedicate the bayou to the public use, or to leave it open as a highway by water, and if the bayou and River street adjoin or encroach upon each other, then after they had conveyed the lots on the east side of the bayou and those on the west side of River street, they had thereby conveyed all the land across from East Water street to the main river, and had no estate left in the intervening space, which they could reclaim or sell. 4. That it is a general rule that prevails all over the states, that the owner of lands bordering on a highway, either by land or by water, owns, by legal intendment, to the centre of such highway. 5. That if any question should arise with them, as to whether the center line of the bayou opposite lots four and five, in block 51, was as far or farther west than the east line of River street, they should, upon that point, have reference to the middle of the bayou, as it was immediately before any filling had been done at that point, either on the east or west side. To each of these instructions, except the first, the plaintiff excepted.

The circuit judge charged the jury generally as follows: " What this bayou was, is the great question in the case. The name 'bayou' is of no consequence. Whether the channel of water has usually been called a river or a bayou, or a brook, or otherwise, makes no difference. It is the nature and character of the thing, and not its popular name, which the law regards. Both these parties claim through Juneau. If Juneau conveyed this ground in suit to Irving and others, through whom the defendant derives title, in 1836, of course he had nothing left then to quit-claim to White and Wells in 1849. It is said that the defendant's lots border on navigable water. Was this then such a channel of water that the owner on the bank takes title to the center? At common law, only tide water was technically called navigable, and the land below the flow of the tide was vested in the crown, and private proprietors owned only down

to that point. This rule has no application to the streams flowing into our great lakes. On ponds, owners on the shore go down to low water mark. On streams, the owner on the bank goes to the center or thread of the stream. Our own supreme court have held this as to the rivers of Wisconsin, particularly the Milwaukee river. In all these northwestern states, it is well settled that the owner on the bank takes title to the center of the stream. Where the stream is navigable in point of fact, the right of the riparian owner is subject to the easement of the public in it as a highway by water. It is for you to find whether this was a navigable stream in fact—that is, a channel or water course, so deep as to be used for purposes of navigation. I suppose, if you believe the witnesses, you will have no difficulty in deciding that it ·was so. I instruct you, however, that the owners on the bayou, for example in block 51, could not own to the center of the main river west of the island, because of the intervening plat of River street and the blocks on the island. Then this is complicated with another highway, to wit, River street. I think the plat made and recorded by the proprietors, and their conveyances of lots along the east side of the bayou, afforded a pledge to the purchasers, that they would have the rights of riparian owners ; and, unless there is an express reservation, they take not only to the water, but also the land under the water. River street lies along the west bank of the bayou, either partly or altogether under the water thereof. I charge you, that if you find that the bayou was a navigable stream until filled ; that the defendant was the owner of the land on the east bank thereof, by purchase from Juneau and Martin under their plat; that River street and the bayou lay upon each other or overlapped, leaving no space between them; and if you find from the plat, deeds, and other testimony, that the proprietors, Juneau and Martin, intended to devote to the public, the use of the entire space between block 50 and block 51 as a highway, partly by land and partly by water, then that whole space was a highway, and the defendant holds to the center of that entire space at least. In that case, since it is admitted that Juneau and Martin conveyed away both blocks 50 and 51,

in view of and according to the plat which they had made, long before the quit-claim from Juneau and wife to White and Wells, in 1849, through which the plaintiff claims title, it follows that Juneau and Martin had parted with all their title, not only to that part of the lots in said block on the original dry land, but also to the land under the entire highway, embracing River street and the bayou, and so had nothing left to convey to White and Wells. And so, in that case, they cannot maintain this action. You will observe that this all depends upon its being proved to your satisfaction, that the bayou was a navigable stream, and was left by the proprietors as a highway, and that there was no reservation of the bayou in the deeds. And so if you find all these facts, you must find a verdict for the defendant."

The plaintiff excepted to so much of said charge as instructs that the rule that the riparian proprietor only owns to the point of the flow of the tide, has no application to the great lakes. 2. To so much as instructs, that if the jury find from the plat, deeds and other testimony, that Juneau and Martin intended to devote to the use of the public the entire space between blocks 50 and 51, as a highway partly by land and partly by water, then the whole space was a highway, and the defendant holds to the center of that entire space at least. 3. To so much as instructs, that if the bayou was navigable and a highway, and there was no reservation of the bayou in the deed, and Juneau and Martin had conveyed according to the plat, blocks 50 and 51, previous to the quit-claim of Juneau to White and Wells, then they, Juneau and Martin, had parted with all their interest in the premises in dispute, and had nothing to convey by such deed, and the plaintiff cannot recover.

Verdict and judgment for the defendant.

*E. Mariner*, in person, for the appellant:

The real question in this case is, whether the conveyance, in 1836, of lots 4 and 5 in block 51, conveyed any part of the premises in controversy. If so, it was because it was included in the terms of the grant, and not because it has become, by subsequent events, more valuable to the grantee, than to any other person. The premises in dispute did not

June Term,
1860.

MARINER
v.
SCHULTE.

pass as appurtenant to the lots; land cannot be appurtenant to land. 2 Met., 147; 8 id., 260; 10 Pet., 25; 15 John., 447. There are no courses and distances given in the deed; nothing but the numbers of the lots and block, with a reference to the plat. The plat must, therefore, be considered as copied into the deed. The proprietors had a right to plat the bayou narrower or broader than it really was, so that they did not interfere with rights of navigation, if it was in fact navigable, and the testimony shows that they did, in fact, disregard the *natural* boundaries of the bayou in making the plat. Their grantees under the plat would therefore take according to the *plat*, and not according to the natural boundaries. The deed and plat together call for a western boundary for lots 4 and 5, on the bayou; but it is not the natural bayou, but the bayou of the *plat*. If there is any ambiguity about them, it is patent and not explainable by parol. 10 Pet., 25; 11 M. & W., 183. The lines of the lots go down *to* the bayou of the *plat;* they do not run into it, and there is a boundary line between them and the bayou, defined on the original plat. If it had been intended to include the bayou to the center, the lines would not have stopped on the shore. Words of exclusion were not necessary in the conveyance. The boundary lines are run—the exact place pointed out by the plat; all within those lines is lot; all without, is something else. 6 Mass., 435; 16 id., 288; 15 Johns., 447; 10 Pet., 25. "It is clear that the proprietors did not intend that the bayou should be a mere mathematical line, for if they did, they would have made it so, and extended the side lines to it, and not have platted the bayou wider than the lots, with shores and a space between." Counsel commented on the case of *Kimball vs. The City of Kenosha*, and contended that the authorities cited in that case did not sustain the doctrine "that a deed of land bordering on a street or road, conveys the soil to the center of the street, and referred to *Child vs. Starr*, 4 Hill, 369; 21 Pick., 292; 11 id., 193; 5 Wheat., 21. These cases establish the principle, that each particular grant is to be construed by its words and circumstances, and if they do not exclude the highway, it passes as included in the grant.

The conveyance of lots 4 and 5 goes only to the bayou, thence along the bayou—under the most liberal construction, along the *center* of the bayou. The extent of that grant cannot depend upon the accident of the platting the land between the bayou and the river. If the proprietors had occupied that land as a pasture field, the rule would have been the same. The deed does not call for the river as a boundary, but for a boundary by the plat. If the proprietors, after platting the island, had dredged out block 50 so that the water of the river would have flowed up to block 51, would they have lost title to block 50? Clearly not. Call the bayou what you will—pond or navigable stream—there is no law which gives a riparian proprietor title beyond the center of it, and no law which gives the owner of block 50 land east of the center of River street. If there is land between, the plaintiff showed title to it, and should recover it.

We have already seen that a deed of a lot conveys only the ground included in the lines on the plat. It is now material to enquire into the nature of the bayou in order to determine the boundary. If it was a stream or water-course, the boundary of lots 4 and 5 would be the thread of the stream (Angell on Water Courses, § 11, et seq.); if a pond or pool, then the boundary was the low water margin (id., § 41, et seq.); if the tide ebbed and flowed, then the boundary was high water mark. The plaintiff proved that there was a light lunar tide in the lake, which extended above lots 4 and 5, and the court erred in refusing the charge asked by the plaintiff on that point. The court erred in refusing the third instruction asked, as the plaintiff had made out a *prima facie* title. It erred also in the instructions given. The second instruction was erroneous, for there was not the least evidence that the proprietors considered the bayou and River street as one highway—the means of locomotion over them were different, and they platted them as *two*, not *one*. 1 Blackf., 43; 6 Pet., 498. The third instruction was erroneous. The dedication of the property to the public leaves the fee in the owner, and all right to the soil not necessary to the enjoyment of the easement created. When the beneficiary refuses the benefit offered, the whole estate reverts

to the donor. The court erred, also, in allowing the question put to the witness as to the representations made to him by Juneau and Martin, at the time he bought lots in block 47. They had, long before that time, conveyed lots 4 and 5, in block 51, and conversations about those blocks not bordering on the bayou could not have been material, and the testimony must have misled the jury. 6 Pet., 498.

*O. H. Waldo* (with whom were *Upham & Graham*), for respondent:

In case of a lake or pond, the proprietor on the shore holds down to *low* water mark. Angell on Water Courses, §§ 41-43; *Lit. Fund vs. Clark*, 9 Iredell, 58; *McPhaul vs. Gilchrist*, 7 id., 169. On rivers, where the tides of the ocean ebb and flow, the riparian proprietor owns down to *high water* mark, and all below that belongs to the state. Angell on Tide Waters, 23, 66, 73. On rivers, where the tides of the ocean do not flow, the riparian proprietor holds to the thread of the stream (id. 75-79; *Middleton vs. Pritchard*, 3 Scam., 510; *Cox vs. The State*, 3 Blackf., 193; *Jones vs. Pettibone*, 2 Wis., 308; *Walker vs. Shepardson*, 4 id., 486; Angell on Water Courses, §§ 10, 11, 23, 25, *et seq.*, 535, 542, 545; Ordinance of 1787), and if there is an island nearest his land, will own across the small stream and island to the center of the main stream. Angell on Water Courses, §§ 44-53; *Ingraham vs. Wilkinson*, 4 Pick., 268. The law will indulge every reasonable presumption to secure certainty in boundary lines, and to find a certain owner to every parcel of land. Angell on Tide Waters, 19, 20, 2d Ed.; 5 Greenl., 69; 2 Conn., 481; 20 Johns., 90; 3 Ohio, 495; 3 Scam., 510. The owners of adjacent lands hold to the center of a highway by land. Angell on Highways, §§ 83, 301, *et seq.;* 7 N. H., 275; 6 Shep., 76; 13 Conn., 23; 1 Sandf., 323; *Kimball vs. Kenosha*, 4 Wis., 321; 3 Scam., *supra.* All limitations are, in their nature, closely restrictive, and in a deed, will be construed most favorably to the grantee. Angell on Water Courses, §§ 5, 17, 18, 173-190; 3 Johns., 375; 2 Har. & Johns., 112; 8 Porter, 9. The rule which controls all other rules, where the intention of the parties is to be implied, but is not fully expressed, is, that that which is most material and cer-

tain shall prevail over that which is less material and certain. Angell on Water Courses, §§ 5, 11, 12, 13, 14, 22, 23, 24, 25, 29, 33, 37, 541; 7 Wheat., 7; 1 Strobhart, 143; 1 Richardson, 491; 18 Pick., 268; 3 Richardson, 80; 5 N. H., 520; 3 J. J. Marshall, 420; 3 Scam., 510; 1 Taylor, 130; 4 Dev. & But., 335; 5 Wheat., 459; 8 Watts, 470. This rule governs generally in relation to corners, calls and stakes, in surveys and deeds, and the extent of lines terminating at a water course. Angell on W. C., §§ 21, 36, 43; 2 Cush., 199; 6 Mo., 229; Story's U. S. Laws, 960—Act of Feb. 11, 1805. As to what constitutes a dedication, and what will prove it, Angell on Highways, § 142–151.

There are no straight lines limiting the lots at the edge of the water, but by legal intendment they extend to the *most certain call.* On the bayou, that call would be that stream, if the plat had shown lots on the island abutting eastward on the bayou; but as the plat shows River street on the eastern edge of the island, partly or altogether under the waters of the bayou, with a definite west plat line, which can be located exactly, but with its east line covered by the water, while the certificate declares the street to be just 80 feet wide, affording the means of fixing the center and east lines thereof with *certainty,* it follows that the most certain western call of the lots 4 and 5, in block 51, is River street. The owners of lots on the west side of that street take certainly to its center. The owners of lots on the east side of the bayou certainly take to the thread of that stream. If the original proprietors, by legal presumption, reserved a strip of land between these two, it must be such an irregular strip as would be bounded on the west by the midle line of River street, and on the east by the thread of the bayou. Now since River street was laid out in some places partly, and in others altogether under the bayou, they must have presumed that so much of the latter would be speedily filled up for the purposes of a street, and so the western margin would be at once obliterated, with no survey or other means to restore it in proof, while the stream might be kept open for an indefinite period for purposes of navigation, and the eastern shore line be either obliterated by docks, &c., or varied by accre-

tion or abrasion. Again, suppose the center line of the street crosses and lies east of the thread of the bayou, a part of the way, who then owns the land between those lines, and who would possess it if the bayou were filled and the street vacated? Again, the plat in the hands of the vendor, shown to a purchaser of lots 4 and 5, would be as good as a written representation that those lots did and should have access to and front on River street on the west, with the additional advantage of a navigable channel of water.

If the jury found in this case, as we suppose they did, that the bayou was a stream, an arm of the river, or water course, then they must also necessarily have found that the east line of River street was as far east as the center or thread of the bayou; or they must have found that the bayou was, in point of fact, navigable until filled; that the defendant was the owner of the land on the east bank thereof, by purchase from Juneau, under the plat made by Juneau and Martin; that River street and the bayou lay upon each other, or over-lapped, leaving no space between; and that the proprietors, Juneau and Martin, intended to devote to the public the use of the entire space between blocks 50 and 51, as a highway, partly by land and partly by water, because it was only in case they found *all* these latter things that they were instructed to find, that the defendant holds to the center of the entire highway, land and water, at least. With such finding of the fact, in either alternative, the verdict and judgment in favor of the defendant, was correct. If River street extended east to or beyond the center of the stream, then the defendant, by reason of his ownership to the center of this stream simply, owns all the land which is described in the complaint. If we adopt the other alternative, then, certainly, the defendant owns to the center of the highway, subject simply to the public easement or right of passage, and it is not pretended that he would not hold the land in dispute by that rule.

January 2.        *By the Court*, COLE, J. The instructions of the circuit court, given upon the trial of this cause, appear to us to have been quite as favorable to the appellant as the facts and cir-

June Term,
1860.

MARINER
v.
SCHULTE.

cumstances of the case would warrant. The charge with regard to the rights of riparian owners upon tide-waters, ponds and inland streams, is in strict harmony with the great current of authority upon that branch of law. This court has had occasion to consider somewhat the nature and extent of those rights, and has affirmed the general doctrine that purchasers of lands lying upon the banks of a stream above the ebb and flow of the tide, when bounded by the stream, are presumed to run to the center of such stream. *Jones vs. Pettibone*, 2 Wis., 308; *Walker vs. Shepardson*, 4 id., 486. This is unquestionably the ordinary presumption of law as to the right of the riparian owner, unless there is something in the language of the grant which indicates a clear intention to restrict that right, and to reserve the bed of the stream adjoining the land. We can discover nothing in this case which shows an intention to limit the lot owners along the bayou to the margin of that bayou. It is insisted, because those lots were platted, that a deed of a lot within a given block only conveys the ground included within the lines of such lot upon the plat, and nothing more or beyond those limits. Or in other words, if a person conveys a lot in a village or city, which has been laid out and platted, and the lot is bounded by a street or river, that then the natural and legal presumption arising from the transaction is, that the grantor intended to restrict the deed to the precise land embraced within the lines describing the lot upon the plat, and not to grant anything beyond, reserving to himself the fee in such highway or river. But this position is understood to be contrary to many authorities, and certainly is in direct conflict with the rule as laid down by this court in the case of *Kimball vs. The City of Kenosha*, 4 Wis., 321. In this latter case it was distinctly decided, that the grantee of a lot bounded by a street or streets, in a village laid out, platted and recorded, in conformity to the statute in force at the time the plat in the present case was made, took to the center of the street on which the lot abuts, subject to the public easement. The counsel for the appellant suggests that this case was not well considered, and that it does not contain the correct rule of law upon this subject. We are aware that the cases are not

uniform upon the point, and that the case of *Kimball vs. The City of Kenosha* stands opposed to some, while it is sustained in principle by others, found in the books, but we are disposed to adhere to it, as containing, upon the whole, the most sound and salutary rule upon this question. So assuming the common law rule of construction to be well settled —as I think we must—that a grant of land in this state, bounded by a highway or river, carries by implication, the fee to the center of the highway or river, subject, of course, to the right of passage in the public, then can any satisfactory reason be assigned why the same rule should not apply to the conveyance of a city or village lot? I fail to see any ground for any distinction. The counsel insisted that a distinction should be made between such lots and larger tracts of land, but I confess to my mind the reason did not appear very obvious or essential. In *Child et al. vs. Starr*, 4 Hill, 369, a like distinction was taken by the eminent counsel who argued for the plaintiff in error; still the distinction did not appear to have made any strong impression upon the members of the court of errors, or at all events, was not sanctioned by any of them who gave opinions on that occasion. Senator BAKER only alludes to it, apparently for the purpose of expressing his dissent from it. And although in that case it was held that the riparian proprietor did not take to the center of the Genesee river, yet this was on the ground that the language used in the deed restricted the grant to the shore of the river. But I do not understand that there is anything in *Child vs. Starr* which shows that the court intended to cast a doubt upon the correctness of the common law rule as to the construction of conveyances of lands bounded by or upon streams, that the legal presumption was, that the grantor intended to convey to the middle of such stream. In the present case, the court told the jury that if the bayou was a pond, the owners on the shore only took down to low water mark, but if it was a stream navigable in point of fact, the riparian owner took to the middle of the stream, subject to the easement of the public in it as a highway by water. The jury undoubtedly believed that the bayou was a stream, and an arm merely of the Milwaukee

river, and it is difficult to see how they could have arrived at any other conclusion upon the evidence. The circuit court then pointed out one or two circumstances peculiar to the case, which restricted the grants and prevented the owners of lots on the east side of the bayou from taking to the center of the Milwaukee river. The fact that the original proprietors of the town platted the island into blocks, lots and streets, was considered conclusive evidence that they did not intend owners of lots on the east side of the bayou should take to the center of the main river. The circuit judge then proceeds in the general charge : " Then this is complicated with another highway, to-wit, River street. I think the plat made and recorded by the proprietors, and their conveyances of lots along the east side of the bayou, afforded a pledge to the purchasers that they would have the rights of riparian owners ; and unless there is an express reservation, they take not only to the water, but also the land under the water. River street lies along the west bank of the bayou, either partly or altogether under the water thereof. I charge you that if you find that the bayou was a navigable stream until filled ; that the defendant was the owner of the land on the east bank thereof, by purchase from Juneau and Martin under their plat ; that River street and the bayou lay upon each other or overlapped, leaving no space between them ; and if you find from the plat, deeds and other testimony, that the proprietors, Juneau and Martin, intended to devote to the public the use of the entire space between block 50 and block 51 as a highway, partly by land and partly by water, then that whole space was a highway, and the defendant holds to the center of that entire space at least."

This portion of the charge we think quite as favorable to the appellant as the facts of the case would justify. Indeed we have come to the conclusion that the true boundary between the lot owners on the east and west side of the bayou, is the east line of River street. We have arrived at this conclusion in view of one or two considerations to which we will briefly allude.

At the time the plat was made and the blocks and lots on each side of the bayou, with River street, were delineated on

the map, the evident expectation of the proprietors of the town seems to have been, that the bayou on the west side would be partly filled up so as to form River street, while the remainder of the bayou would remain open for the purpose of navigation. The bayou, it appears, at this time was navigable, and probably the proprietors supposed it might be filled in sufficiently to make River street, without injuriously affecting its navigability. Therefore, when River street was made, lot owners in block 50 would have ready access to the bayou by passing across that street. This, it is clear, would be very desirable, and would give additional advantages to those lots for business purposes; while the lot owners of lot 51 would have all the facilities of a business point abutting upon navigable waters, and also the advantage of a street on the west side of the bayou. It is not to be supposed that considerations of this kind would be lost sight of by sagacious business men. Furthermore, in the event the bayou should be entirely filled up, then the owners of lots on the east side would still have access to the same street. And should the street, for any cause, be vacated, or never be made, the owners of lots on the island would not be cut off from the bayou. It seems to us that these considerations must have had weight with the proprietors of the town, when they made this plat and designated the blocks and lots on each side of the bayou and River street in the manner they did; and that they intended that owners of lots upon the east side of the bayou should take the fee to the street on the west, while those on the island should have access to the bayou, and take the fee up to the east line of the street. In view of the nature and situation of the property, and of all the circumstances of the case, this is the most satisfactory result at which we have been able to arrive. We can entertain no doubt that the proprietors of the town intended to convey away all their interest in the space covered by the bayou and River street, to the adjoining lot owners, and to do so in such a manner as most effectually and fully to protect and secure the rights of all concerned. And in view of the fact that two highways were laid out side by side, the one by land and the other by wa-

ter, upon which the lots on the main land and those on the
island abutted, they might reasonably have intended that
the boundary between those lots should be the east line of
River street, in order to secure the rights of all parties in a
public highway in the event that one or the other in time
should be discontinued.

It is quite true that the question as to the true boundary
between the different lot owners on the island and main
land, is not strictly raised by the instructions of the circuit
court, and therefore it is not necessary, perhaps, to decide it
in this cause; but still, since it was so fully discussed by
the counsel for the respondent, and we were given to under-
stand that several cases were still pending where it might be
necessary to consider it, we have felt at liberty thus to ex-
press an opinion upon it.

The counsel for the respondent forcibly pressed upon our
attention several considerations which he thought required
us to hold that the boundary between the lot owners on the
island and those on the main land, was the center of River
street. The main reason was, that the law of real estate
loves certainty in boundary lines, and that the center of
River street was the most certain call for lots upon each
side of it. But we cannot perceive that a mathematical line
through the center of the street would be any more certain
than the east line thereof, the middle of the street being giv-
en. In analogy to the common law rule of construction,
the center would be the natural boundary. But this case is
a little peculiar in its circumstances, and if we should hold
that the center of the street was the true boundary, it is very
clear that lot owners on the west side thereof would have
been cut off from the bayou, in the possible contingency that
River street had been vacated, and the bayou kept open for
the purposes of navigation. It seems the bayou has been
entirely filled up, its waters having become injurious to the
health of the citizens; but probably the proprietors of the
town as little expected this result, when they laid it out and
gave deeds in the first instance, as they contemplated the
discontinuance of River street itself Indeed, from the con-
dition of the bayou in 1836, and some years thereafter, the

June Term, 1860.

MARINER
v.
SCHULTE.

latter event would appear more probable than the former, to a person speculating as to the future.

These observations are sufficient, we think, to dispose of all questions arising upon the charge of the court, and instructions given the jury, as well as the refusal to give the special instructions asked for on the part of the appellant, and we therefore shall not notice these instructions with any more particularity. We think the law of the case is laid down by the court more favorably to the appellant than in strict right he could insist upon, and hence he has no reason to complain. And we can discover no material error in the various rulings of the court as to the admission or exclusion of testimony on the trial.

The judgment of the circuit court is affirmed.

NOTE.—The insertion of the foregoing case of *Mariner vs Schulte* was delayed in consequence of the plat used on the trial here, having been returned with the record to the court below.—REP.