NORCROSS, Respondent, vs. GRIFFITHS and another, Appellants.

*March 4 — April 6, 1886.*

*Riparian owner: Title to bed of stream: Conveyance by metes and bounds: Presumptions.*

1. The owner of the bank of a navigable stream by purchase from the United States is, in this state, conclusively presumed to be the owner of the stream in front of his purchase to the middle or thread thereof.

2. The same presumption arises in favor of the owner of such bank in all cases, however he acquired his title; but in the case of an owner not deriving his title directly from the government the presumption is not conclusive.

3. The owner of lands bordering upon a navigable stream and of the bed of the stream in front of such lands, may separate the ownership of such lands from the ownership of the bed of the stream, and convey them to different grantees.

4. When the owner of lands bordering upon a navigable stream conveys a portion thereof described by metes and bounds which (although no reference is made to the stream) include the whole of the bank of the stream along the whole length of the part conveyed, it will be presumed that he intended to convey and did convey all his rights to the bed of the stream in front of the land described, to the middle of such stream; and that presumption can be rebutted only by an actual reservation in the deed, or by evidence of such circumstances attending the making of the conveyance as clearly show an intention to limit the grant to the exact boundaries fixed by the description.

APPEAL from the Circuit Court for *Rock* County.

Ejectment. The land in question is a part of the bed of Rock river, and is a part of lot 174 in Smith, Bailey and Stone's addition to the city of Janesville. Said lot 174 is bounded on the north by Milwaukee street and on the east by the middle line or thread of Rock river.

On June 25, 1852, Timothy Jackman and Shubael W. Smith were the owners of the whole of said lot 174, except a strip along the east side thereof, lying wholly in the bed

of the river, having a frontage of twenty feet on Milwaukee street and extending back one hundred feet along the center line of the river, which strip had previously been conveyed to one Peter Myers. On that day they conveyed to Samuel D. Smith a portion of said lot 174, fronting on Milwaukee street and particularly described by metes and bounds which included the west bank of the river. The full description of the land so conveyed, as contained in the deed, will be found in the opinion. The land in question in this action lies in the bed of the river between the eastern boundary of the land described in that deed and the west line of the strip owned by Myers. The defendant *Griffiths* claims title under and by virtue of said deed to Samuel D. Smith and *mesne* conveyances by which the title to the west bank of the river became vested in him. In 1878 and 1879 he had erected a building over the river on the premises in dispute, and the defendant *Holmes* was in possession thereof as his tenant.

In 1867, the said Timothy Jackman and Shubael D. Smith conveyed to Chester A. Alden, John Clark, and Horace Dewey all of said lot 174 excepting the part conveyed to Samuel D. Smith as aforesaid and certain other parts not material here. The plaintiff claims title to the premises in question under *mesne* conveyances from said Alden, Clark, and Dewey.

The cause was tried by the court, a jury having been waived. The court found as facts that the plaintiff was the owner and entitled to the possession of the premises, and rendered judgment accordingly. The defendants appealed.

For the appellants there was a brief by *Winans & Hyzer* and *E. F. Carpenter*, attorneys, and a separate brief by *I. C. Sloan*, of counsel, and the cause was argued orally by *Mr. Winans* and *Mr. Sloan*.

*B. B. Eldredge*, attorney, and *Wm. Ruger*, of counsel, for the respondent, contended, *inter alia*, that the parties to

the deed to Samuel D. Smith having used plain and explicit language in making their description of the property granted, and having by such language and description fixed a boundary to the granted premises which no intelligent man could mistake, the court has nothing to do about it, construction has no office to perform, and the law makes no interpretation. The grantee under such conveyance holds to the limit which such grant prescribes, and by that limit he is bound. Tyler on Boundaries, 127; *Gove v. White*, 20 Wis. 425; *Armstrong v. Du Bois*, 90 N. Y. 95, 103; *Clark v. Wethey*, 19 Wend. 320; *Drew v. Swift*, 46 N. Y. 204; *Child v. Starr*, 4 Hill, 369; *Jackson v. Hathaway*, 15 Johns. 447; *White's Bank v. Nichols*, 64 N. Y. 65; *King's Co. Ins. Co. v. Stevens*, 87 id. 287; *Tyler v. Hammond*, 11 Pick. 193; *Hoboken L. & I. Co. v. Kerrigan*, 31 N. J. Law, 13; *Kingsland v. Chittendon*, 6 Lans. 15; *Comm. v. Roxbury*, 9 Gray, 524, note; *Boston v. Richardson*, 13 Allen, 153–5.

TAYLOR, J. This is an action of ejectment, brought by the respondent to recover a piece of land particularly described in the complaint, and of which the appellants held possession at the commencement of this action, claiming title adversely to the plaintiff and respondent. There are certain facts which are either admitted or fully proven upon the trial.

The *first*, and a very material fact in the case, is that the land described in the complaint was, at the time of the commencement of the action, a part of the bed of Rock river, and within the city of Janesville.

*Second.* That it was a part of the bed of said river when the common grantors of the plaintiff and defendants first acquired title to the same by patent from the United States.

*Third.* That before 1850 the land, of which lot 174 hereafter mentioned is a part, was platted into lots, blocks,

and streets as Smith, Bailey & Stone's addition to the city of Janesville, and on such plat the land in controversy was and is a part of lot 174, adjoining and west of the center line of said river.

*Fourth.* Both plaintiff and defendants agree that in 1850, and before the conveyance hereafter mentioned under which the defendants claim title to the lands in dispute, A. Hyatt Smith, Timothy Jackman, and Shubael W. Smith, and John L. Kimball were owners in common of the whole of said lot 174 in said Smith, Bailey & Stone's addition.

*Fifth.* That as such owners of said lot they were owners of the land under said Rock river, lying east of said lot, to the center of said river, and so were the owners of the land in controversy.

*Sixth.* Both plaintiff and defendants claim title under the said Smiths, Jackman, and Kimball.

*Seventh.* It was shown on the trial that Rock river in front of said lot 174 is a navigable stream.

*Eighth.* That on or before the 25th of June, 1852, Timothy Jackman and Shubael W. Smith had purchased from the other owners above named all their interest in said lot 174, and in the land under the river in front thereof, and were the owners of said lot and land.

*Ninth.* That on said 25th day of June, 1852, by warranty deed duly executed and acknowledged by the said owners, Jackman and wife and Smith and wife, they conveyed to Samuel D. Smith a part of said lot 174, described in said deed as follows: " All that certain piece, parcel, or tract of land situate, lying, and being in the village of Janesville, in the county of Rock, and state of Wisconsin, being a part of lot No. 174, in Smith, Bailey & Stone's addition to Janesville, described and bounded as follows, to wit: Commencing at a point on the southerly line of Milwaukee street in said addition, 145 feet and 6 inches easterly from the easterly side of River street in said addition; thence southerly

at right angles with said Milwaukee street, and parallel to the easterly or river side of the grist-mill now standing on said lot No. 174, and owned by said party of the first part, and four feet easterly therefrom, to a point 100 feet from the southerly line of said Milwaukee street; thence easterly on a line at right angles with the last-mentioned line, and parallel with the southerly line of said Milwaukee street, 46 feet, to a point; thence northerly at right angles with the last-mentioned line, and the southerly line of Milwaukee street aforesaid, and parallel to the westerly line of the land conveyed, to the southerly line of Milwaukee street; thence westerly along the southerly line of Milwaukee street to the place of beginning,— being the same land on which the brick block lately built by the said party of the second part and one Isaac M. Norton now stands; together with a *right of way* over the land belonging to said party of the first part on said lot 174 from Dodge street *to the south or rear end of the land hereby conveyed,* of sufficient width to admit of *entering and turning in the rear of the said lot hereby conveyed* with a wagon and two horses; together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining: To have and to hold the said premises, with the appurtenances, to the said party of the second part, and to his heirs and assigns, forever, *reserving* to themselves, nevertheless, all the rights and privileges granted to them by and contained in the covenants and agreements *hereinafter contained* on the part of the said party of the second part; . . . and the said party of the second part . . . doth hereby covenant and agree . . . to construct, keep, and maintain throughout the foundation of any buildings that now are, or may hereafter be, erected upon the lot hereby conveyed, convenient and necessary arched passage-ways or culverts for the water discharge from the tail of said mill, to be of the capacity of said mill-tail, into which said passage-way the said party of the first

part . . . shall forever have access for the purpose of making all necessary repairs to said mill, or for any purpose connected with said mill, and for which it may be necessary to use the said arched passage-ways or culverts."

*Tenth.* It is shown that previous to the date of this deed, and on the 16th day of August, 1850, the then owners of said lot 174 had entered into a written contract to sell and convey the lands described in the deed above referred to, to the said Samuel D. Smith, for the sum of $1,000 in money, and upon the condition that he should immediately erect a good, substantial three-story brick building on the land described in said contract.

*Eleventh.* The evidence shows, and the trial judge found, that the said S. D. Smith did erect a substantial brick building on said lot, 46 feet in width, fronting on Milwaukee street, in said city, and extending about 50 feet south from said street, and that the same was completed before the deed to him was executed in June, 1852, as above mentioned.

*Twelfth.* The trial judge also finds, and the evidence shows, that the east foundation wall of said building at the north end was placed in the water of Rock river about five feet east from the west shore or bank of said river at an ordinary stage of the water, and where the east wall was erected the water in the river was from six inches to one foot deep; that the building erected by Smith, and referred to in his deed, not only covered the bank of the river, but extended at least five feet east of the bank into the river proper, and towards the center thereof; and that the south end of the east foundation wall was about six feet in the water of said river. The difference in distance was caused by the fact that the bank of the river, running south from the northeast corner of said building, bore slightly to the west of a line at right angles with Milwaukee street.

*Thirteenth.* The evidence shows that the northeast corner of the foundation of the building erected on said land was

4.43 feet further east than it would have been had it been placed just 46 feet east of the starting-point mentioned in the deed, on the line of Milwaukee street, viz., 145 feet and 6 inches east of the east side of River street. The reason that the building was moved east 4.43 feet is explained by the surveyor, Mr. Ruger, who testified that the two calls in the deed — the starting-point 145 feet and 6 inches east of the easterly side of River street, and the other the line running southerly at right angles with Milwaukee street, and four feet easterly of and parallel to the easterly side of the grist-mill then standing on said lot — were conflicting calls; that the line running south and at right angles with Milwaukee street at the starting-point, 145½ feet east of the easterly side of River street, would not run east of the mill four feet; and that in order to make the line running south run at right angles with Milwaukee street, and parallel with and four feet east of the east side of the mill, the starting-point had to be moved 4.43 feet further east, and that it was so moved; and the northwest corner of the building erected by the said Samuel D. Smith is in fact 149.93 feet east of the easterly side of River street.

*Fourteenth.* That about the time the said grantors conveyed this parcel of land to the said Samuel D. Smith they conveyed a part of the bed of the river, 20 feet in width and 100 in length, to one Peter Myers, lying immediately west of the center line of said river and in front of the lands conveyed to said Samuel D. Smith, the west line of said land conveyed to said Myers being about 86 feet east of the east line of the land conveyed to Samuel D. Smith, as said line is described in the deed to him. The whole of the land between the land conveyed to Smith and that conveyed to Myers was, at the time of said conveyance, a part of the bed of Rock river, and entirely covered with the waters of said river.

*Fifteenth.* There is no evidence that any claim was made

by the grantors of said Samuel D. Smith, or those claiming under such grantors, to the bed of the stream in front of the lot conveyed to said Smith, and lying between said lot and that part of the bed of said stream conveyed to said Myers, after the conveyance to said Samuel D. Smith, until shortly before the commencement of this action.

Upon this state of facts the only material question in the case is whether the deed of Jackman and wife and Smith and wife to Samuel D. Smith, bearing date June 25, 1852, conveyed the lands in question to the grantee, Samuel D. Smith. The whole case depends upon the construction which must be given to that deed. If that deed conveyed the land in dispute to Samuel D. Smith, then the plaintiff has failed to show any title to the land in controversy. It is wholly unnecessary, therefore, to consider the language used in any of the subsequent deeds given either by the grantors of the plaintiff or by Samuel D. Smith and his grantees. Such subsequent deeds can have very little weight in determining the effect which should be given to the deed to Samuel D. Smith.

The facts above stated show, beyond any controversy, that the grantors of Samuel D. Smith, at the time they conveyed to him, owned the land so conveyed and the bed of the navigable stream in front of the same to the center thereof, except the twenty feet of said bed conveyed to said Myers. They also show beyond controversy that by their deed to the said Samuel D. Smith they conveyed to him the land west of the said navigable stream, and east to the waters thereof, including the banks or shore of the same, for the entire length of the parcel of land conveyed to the said Samuel D. Smith; and that the said Smith, by virtue of said deed, became the owner of the west banks and shore of said stream along the whole extent of the length of the lot conveyed to him.

Having shown that Smith was in the possession and own-

ership of the bank of said stream as above stated, in the absence of any evidence showing that his ownership was limited by some particular line not extending thereto, the legal presumption is that he is the owner of the bed of the stream in front of his lot to the center or thread of said stream. *Jones v. Pettibone,* 2 Wis. 308; *Walker v. Shepardson,* 4 Wis. 486; *Mariner v. Schulte,* 13 Wis. 692; *Arnold v. Elmore,* 16 Wis. 509; *Yates v. Judd,* 18 Wis. 118; *Weisbrod v. C. & N. W. R. Co.* 18 Wis. 35, 43; *Hegar v. C. & N. W. R. Co.* 26 Wis. 624, 629; *Young v. Harrison,* 6 Ga. 130; *Jones v. Water Lot Co.* 18 Ga. 539; *Moses v. Eagle & P. Manuf'g Co.* 62 Ga. 455; Angell on Watercourses (7th ed.), § 10.

This court say in *Weisbrod v. C. & N. W. R. Co. supra,* in regard to the owners of land adjoining a public street in a city: " The well-settled presumption in all such cases is that the proprietor of the adjoining lot owns to the center of the street, and that the purchaser takes to the center by virtue of a conveyance of the lot. People act upon this presumption in buying and selling. The right of the soil in the street is a valuable right to the owner of the adjacent lot, as the facts of this case abundantly show. It is true that this is but a presumption, and, ordinarily, liable to be defeated by proof that the right of soil is altogether in one or the other of the adjoining proprietors, or that one has a greater or less interest than the other." The rule as stated above has been applied with equal force and propriety to the owners of land upon the opposite banks of both navigable and non-navigable streams in this state.

In the case at bar it is only by the application of this presumption that the original owners of said lot 174 have shown any title in themselves to the bed of the stream in front of the defendant's lot. They did not purchase the bed of the stream from the government of the United States, as the supreme court of the United States has ex-

pressly declared, in the case of *Railroad Co. v. Schurmeir*, 7 Wall. 272, 286, that the bed of a navigable stream is not conveyed by the patent of the United States for a lot of land adjoining such stream. In this state, therefore, the only right the original grantee of the United States has to the bed of a navigable stream in front of the land granted by the United States depends upon the decisions of this court, which hold that, presumptively, the purchaser from the United States takes to the thread of the stream in front of the land purchased which is bounded by such stream, and this notwithstanding the decision of the supreme court of the United States that no such title passed by its grant, and that such title remained in the state in which the navigable stream was situate. In the case of *Barney v. Keokuk*, 94 U. S. 324, the supreme court of the United States say of the decisions of the state courts holding a different rule: "Whether, as a rule of property, it would now be safe to change these doctrines when they have been applied, as before remarked, it is for the several states for themselves to determine. If they choose to resign to the riparian proprietors rights which properly belong to them in their sovereign capacity, it is not for others to raise the objection." In the case of *Olson v. Merrill*, 42 Wis. 212, the late Chief Justice RYAN, after quoting the language of the supreme court of the United States as above stated, says: "This view, so far as may have been necessary, leaves this court free to adhere to a doctrine almost as old as the state, and which it would now be mischievous to disturb."

The result of these decisions is that in this state the owner of the bank of a navigable stream, by purchase from the United States, is conclusively presumed to be the owner of the bed of the stream in front of his purchase to the middle or thread thereof; and under the same decisions the same presumption arises in favor of the owner of such bank in all cases, however such owner acquires his title; but the

presumption in the case of owners not deriving their title directly from the government is not conclusive.

The second question, and perhaps the only other material question in the case, is whether the evidence produced upon the trial has overcome the presumption raised in favor of Samuel D. Smith, the grantee of the original owners, as to his ownership of the bed of the river in front of the land conveyed to him. It must be admitted, upon a consideration of all the authorities, that the owner of lands bordering upon a navigable stream, and who owns the bed of the stream in front of his lands, may separate the ownership of the lands upon the bank of such stream from the ownership of the bed of the stream, and convey the shore and bank to one grantee and the bed of the stream to another. That is what the learned counsel for the respondent claim was done in this case.

The basis of the claim rests upon the fact (and, as I think, that fact alone) that in the deed of conveyance to Samuel D. Smith the boundaries of the land conveyed are exactly described by metes and bounds, no reference whatever being made to the river, and therefore it is claimed that nothing passed by the deed outside the boundaries particularly described in the deed. On the other hand, it is claimed by the learned counsel for the appellants that, as the evidence clearly establishes the fact that the boundaries mentioned in the deed do in fact include the whole of the banks and shore along the river for the whole length of the lot conveyed, there arises a presumption that the grantors intended to convey, and did convey, all their rights to the bed of the stream in front of the lands described in the deed to the middle of such stream, and that such presumption can only be rebutted by an actual reservation in the deed, or by the production of such facts and circumstances in evidence attending the making of the conveyance as

clearly show an intention to limit the grant to the exact boundaries fixed by the description in the deed.

After a careful consideration of the very able and exhaustive arguments of the counsel for the respondent, and of the authorities cited by them in their briefs, as well as the arguments and authorities presented by the counsel for the appellants, we are clearly of the opinion that, so far at least as this court has spoken upon the subject, it has adopted the rule contended for by the counsel for the appellants; and that upon the face of the deed to Samuel D. Smith, and the evidence showing the location of the land described therein, it must be held that the grantee, Smith, took the bed of the stream to the center thereof, or so much thereof as the grantors owned when said deed was executed.

Under the rule established by this court, as well as of other courts cited below, the important fact in the conveyance which raises the presumption of an intent to convey the bed of a navigable stream, or the street or highway, in front of the land conveyed, is that the side of the street or highway, or the bank of the navigable stream, is in fact the boundary on the side of the lands described in the deed next to such street or stream, or that such side of the street or bank of the stream is included within the boundaries mentioned in the deed on the side next thereto, although the line of the tract as described in the deed may extend beyond the side of the street or bank of the river into the street or river. The fact that the line of the tract of land conveyed as described in the deed is a straight line from point to point, by course and distance, on the side next the river or street, and that no mention is made of the river or street, does not, of itself, overcome the presumption of an intent to convey to the center of the river or street, if such line be in fact substantially coincident with the side of the

street or the bank of the river, and extends to or into such river or street. *Jones v. Pettibone,* 2 Wis. 308; *Walker v. Shepardson,* 4 Wis. 486; *Ford v. C. & N. W. R. Co.* 14 Wis. 609; *Gove v. White,* 20 Wis. 425, 432; *Kimball v. Kenosha,* 4 Wis. 321; *Yates v. Judd,* 18 Wis. 118; *Wis. R. Imp. Co. v. Lyons,* 30 Wis. 61; *Wright v. Day,* 33 Wis. 260; *Pettibone v. Hamilton,* 40 Wis. 402; *Kneeland v. Van Valkenburgh,* 46 Wis. 437; *Smith v. Ford,* 48 Wis. 163; *Valley P. & P. Co. v. West,* 58 Wis. 599, 608; *Olson v. Merrill,* 42 Wis. 203; *Boorman v. Sunnuchs,* 42 Wis. 233, 243; *Mariner v. Schulte,* 13 Wis. 692.

In the case of *Wright v. Day, supra,* Chief Justice DIXON says: "The plaintiff being the owner of all the land to the river, and not stopping at the meander line as his boundary, at the time of his conveyance to Fletcher, must be presumed to have conveyed, and to have intended so to do, as he himself held, and according to his true boundary on that side, unless the deed, by clear and unmistakable words, evinces a contrary intention, and a design to make the meander line a new boundary in the direction towards the river. The deed contains no such words." In *Pettibone v. Hamilton, supra,* it appeared that the owner of a tract of land conveyed several parcels thereof by metes and bounds, without any mention of an alley at the rear end of the same, and which alley was not in existence when the lots were so conveyed; but that afterwards the grantor of such lots platted the tract of which such lots were a part, and included the lots so conveyed in his plat, and on said plat laid out an alley in the rear of said lots, and dedicated the same to the use of the owners of the lots abutting the same. This court held that the owners of the lots so conveyed took the fee in the alley in the rear of their respective lots. In the opinion Justice LYON says: "We fail to find any sufficient evidence that Dr. Darling [the proprietor who made the plat] retained, or intended to retain, any title whatever

to the 'Darling Place', or the *alley*, after he conveyed the land abutting thereon." In *Kneeland v. Van Valkenburg*, *supra*, it is said: "It is true that the designated boundary lines of the premises conveyed are the lines between lot 1 and the abutting streets, as those lines would be usually marked on a map or plat; but there is not in the terms of the deed any express exclusion of the land between the lines and the centers of the streets. The rule above stated will not permit an inference of an intention to exclude the streets from the mere fact that the boundary lines specified in the grant are outside the limits of the streets. It was substantially so ruled in *Pettibone v. Hamilton.*"

The rule applied by this court to streets is equally applicable to the grant of lands upon a navigable stream, and the reasons for applying it are more forcible than for its application to public streets. The cases certainly make no distinction in favor of the grantor who conveys lands bordering on a navigable river. In *Jones v. Pettibone, supra*, Chief Justice WHITON says, speaking of the meander line run by the government: "But this line is not the boundary of the lot, and is run merely to determine the quantity of land contained in it. We are of the opinion, therefore, that the lots extended to the stream, *and, of course, to the center.*" The italics are not in the original opinion.

The reasons for holding that a grant of land bounded in the deed by a highway, or a navigable or non-navigable stream, should be construed as conveying all the rights of the grantor in the conveyance to the lands in the highway, or in the bed of the stream to the center thereof, are so clearly and fully stated in a dissenting opinion by Justice REDFIELD in the case of *Buck v. Squiers*, 22 Vt. 484, 494, that I feel justified in stating them at length in this opinion. He says:

"The rule itself is mainly one of policy, and one which, to the unprofessional, might not seem of the first importance; but it is at the same time one which the American

courts, especially, have regarded as attended with very
serious consequences when not rigidly adhered to, and its
chief object is to prevent the existence of innumerable strips
and gores of land along the margins of streams and high-
ways, to which the title for generations shall remain in
abeyance, and then, upon the happening of some unex-
pected event, and one consequently not in express terms
provided for in the title deeds, a bootless, almost objectless,
litigation shall spring up to vex and harass those who in
good faith had supposed themselves secure from such em-
barrassment.

"It is, as I understand the law, to prevent the occurrence
of just such contingencies as these that in the leading, best-
reasoned, and best-considered cases upon the subject it is
laid down and fully established that courts will always
extend the boundaries of land, deeded as extending to and
along the sides of highways and fresh-water streams not
navigable, to the middle of such streams and highways, if
it can be done without manifest violence to the words used
in the conveyance. And to have this rule of the least prac-
tical importance to cure the evil which it is adopted to
remedy, it must be applied to every case where there is not
expressed an evident and manifest intention to the con-
trary,— one from which no rational construction can escape.
The rule, to be of any practical utility, must be pushed
somewhat to the extreme of ordinary rules of construc-
tion, so as to apply to all cases, when there is not a clearly
expressed intention in the deed to limit the conveyance
short of the middle of the stream or highway. If it is only
to be applied like the ordinary rules of construction as to
boundary, so as to reach as far as may be the clearly
formed idea in the mind of the grantor at the time of exe-
cuting the deed, it will ordinarily be of no utility as a rule
of expediency or policy; for in ninety-nine cases in every
hundred the parties at the time of the conveyance do not

esteem the land covered by the highway of any impor-
tance either way; hence they use words naturally descriptive
of the prominent idea in their minds at the time, and in
doing so define *the line which it is expected the party will
occupy and improve.* This is the view taken by Wallace in
the American notes to *Dovaston v. Payne,* 2 Smith's Lead.
Cas. 90, where the cases upon the subject are collated and
compared."

Whatever may be the rule as laid down by the decisions
of other courts, we are of the opinion that the broad rule
as stated by Justice REDFIELD, as quoted above, has been
adopted by this court in the cases of *Jones v. Pettibone,
Wright v. Day, Pettibone v. Hamilton,* and *Kneeland v. Van
Valkenburgh, supra;* and after a careful consideration of
the learned arguments of the counsel for the respondent,
and of many cases cited from other courts which would
seem to be somewhat in conflict with the rule as laid down
in the cases above cited in this court, we must adhere to the
rule stated, and we have no hesitation in saying that the
rule as adopted by this court is the more beneficial to both
public and private interests.

The rule, as above stated in this opinion, that the owner
of the bank and shore of a navigable stream in this state
is presumed to be the owner of the bed of the stream to
the center thereof in front of his land, and that in the con-
struction of a deed which conveys such bank and shore the
important fact to be considered, in determining whether it
shall be held that the grantor intended to convey his inter-
est in the bed of the stream to the center thereof, is that
the bank of the stream is in fact the boundary of the land
conveyed on the side next thereto, and not that the land as
described in the deed is bounded on that side by the stream,
has the advantage of certainty over the rules as laid down
by some of the other courts, and does not leave the question
of boundary open to the contention and litigation which is

so justly deprecated in the opinion of Justice REDFIELD above quoted. When it is made to appear that the lands conveyed by the deed extend to and cover the banks of a navigable stream, the presumption is that the intention was to convey all the right of the grantor in the bed of the stream to the center thereof; and in order to defeat this presumption there must be clear proof that such was not the intention of the parties to the conveyance, and the fact that in giving the boundaries of the lot conveyed no mention is made of the stream, and that the lands are described by courses and distances, does not, in itself, overcome such presumption.

The rules adopted by this court, as above stated, are not unsupported by the authority of other courts of admitted learning and ability. All the courts seem to agree upon the proposition that it is a question of intent in all cases, when the language used is not of such an absolute character as to exclude the intent and limit the boundaries of the grant by language admitting of but one construction.

In *Webber v. Eastern R. Co.* 2 Met. 151, Chief Justice SHAW says: "The question whether a grant extends to the side line or the center of a highway or navigable stream, is a question of construction in each case, and depends, as all other cases, upon the intent of the parties as expressed in the descriptive parts of the deed, explained and illustrated by all the other parts of the conveyance, and by the localities and subject matter to which it applies." The same language is used by the court in *Codman v. Evans*, 1 Allen, 446. Chancellor KENT says: "The established inference is that a conveyance of land bounded on a public highway carries with it the fee to the center of the way as part and parcel of the grant. The idea of an intention in the grantor to withhold his interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed. It would be contrary to the univer-

sal practice. . . . It would require an express declaration, or something equivalent thereto, to sustain such an inference; and it may be considered as the general rule that a grant of land bounded upon a highway or river carries the fee in the highway or river to the center of it, provided the grantor at the time owned to the center, and there be no words or specific description to show a contrary intent." 3 Kent's Comm. 433, and cases cited in notes.

In *Mott v. Mott*, 68 N. Y. 252, it was held that while the words of description in the deed would, according to the rule of law established by the courts of that state, carry the grant to the center of a street or lane, yet, as it was proved from other parts of the deed, as well as from extrinsic evidence, that it was the intention to exclude the street or lane from the grant, it was held not to be included in the grant. It is unnecessary to cite authorities on this well-established rule of law. The contrary is not contended for by the learned counsel for the respondent in this case.

The whole weight of the argument advanced by the learned counsel for the respondent is that the land granted by the conveyance to Samuel D. Smith is so specifically described in the deed as to exclude the idea of an intent to convey the bed of the stream in front of the lot described in the deed. This contention is based solely on the fact that the boundaries in the deed are specific, and no reference is made to the river as a boundary in the deed. These facts have been pressed upon the court with great earnestness by the counsel for the respondent as conclusive that there could have been no intent on the part of the grantors to convey the bed of the stream, and as the land is not described in the deed as in any way bounded on the river side by, along, or on the stream, the court has no power to extend the grant beyond the boundary fixed in the deed by any supposed intention on the part of the grantors. This question was, we think, presented and passed upon by this court adversely to

the claim of the counsel for the respondent, in the four cases above cited in this court. The same question has been considered in the following cases in other courts, and decided adversely to the position taken by the learned counsel:

In *Champlin v. Pendleton,* 13 Conn. 23, at the trial the court charged the jury "that if they could find that the grantors by such deeds conveyed the land to the line of the highway, and did in fact bound it upon the highway, though the deeds did not contain any words bounding it *upon, by,* or *along* the highway, or in any way mention or refer to the highway as a boundary of the lot, still the legal construction of the deeds was the same as if they contained such words, and conveyed the land to the center of the highway." This instruction was approved by the supreme court of that state, and the court use the following language in passing upon the question: "But it is said there is a difference between a deed describing the land as bounded upon, by, or along a highway and one in which no mention is made of the road, and that in the former case the fee in the highway will pass, but not in the latter. But we know no such distinction. If the land conveyed is in fact bounded by a highway, it can make no difference in the legal construction of the conveyance whether the words 'by the highway' are used or not. The effect in the one case will be the same as in the other." See decisions of like import: *Read v. Leeds,* 19 Conn. 182; *Gear v. Barnum,* 37 Conn. 229; *Stiles v. Curtis,* 4 Day, 328; *Chatham v. Brainerd,* 11 Conn. 60.

In the case of *Giraud's Lessee v. Hughes,* 1 Gill & J. 249, the court of appeals of Maryland held that in an action of ejectment the plaintiff could not recover, when it appeared that the plaintiff claimed title by a patent from the state, and the defendant claimed under an older patent describing the lands as below stated. The land in controversy had been formed by the gradual recession of the waters on the

shore of the Patapsco river. In the older patent of the defendant the lands were bounded by lines running into the waters of the river, though they did not call for the water where the recession took place. In the opinion the court say: "It is contended that as the lines of Gist's inspection [the one under which the defendant claimed] were originally run course and distance, when the survey of it was made, and had no call to the water, it must be confined to its course and distance, and cannot be extended beyond them." The court held against the contention. This case is cited with approval by the supreme court of the United States in *Jones v. Johnston,* 18 How. 150, 157.

In *Watson v. Peters,* 26 Mich. 508, 517, Justice COOLEY says: "The owner of city lots bounded on navigable streams, like the owner of any other lands thus bounded, may limit his conveyance thereof within specific limits, if he shall so choose; but when he conveys with the water as a boundary, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed, which he may grant to others for private occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the shore of navigable water. . . . And the rule itself is too valuable and too important to be varied by so immaterial a circumstance as that the boundary on the water is defined by a line, instead of making use of words which to the common understanding would convey the same meaning."

In *Richardson v. Prentiss,* 48 Mich. 88, where the grant in question extended some distance into navigable waters, and was described by courses and distances, it was still held that the grantor could claim no rights in the land under the water beyond, as against the grantee. In this case the court say: "The uplands conveyed by the second deed to complainant certainly included all the upland to the water's edge, and there was added thereto the clause that the land so con-

veyed should extend no further into the bay, that is, the land under the water thereof, than six rods from the rear of lot five. The case, therefore, is stronger, if that were possible, than any of the above referred to; for, while they were bounded by the water's edge, here the boundary is some four rods from the shore, out in the waters of the bay. It not only conveys the entire bank, but a part of the lands under the water, if that could add to the grantee's rights. The question is not one of power in Mrs. Hitchcock, while she owned the bank or upland, to have separated the water privileges therefrom by a sale thereof, upon which we at present express no opinion, but rather whether, in selling the upland under this second conveyance, notwithstanding the peculiar language thereof, all riparian rights did not pass to the grantee named therein. . . . The language in the deed which has given rise to this controversy is, in my opinion, no stronger than though the land sought to be conveyed had been described by metes and bounds, running out six rods from the rear of lot five. The conveyance purports to be one of lands. It is so much of a reserved strip as lies in the rear of lot five, but extending no farther into the bay than six rods. The rights appurtenant to this land are not reserved nor restricted in any way, and, as the land conveyed extends out and into the waters of the bay, all riparian rights pertaining thereto pass with it as part of the subject matter. There cannot be found in the deed that clear, decided language of a manifest attempt to limit the grant which the law requires in order to vary the rule so firmly established, under which riparian rights follow a conveyance of the upland bank, or shore."

Although the question in the case last cited arose on the grant of lands bordering on a bay of one of our large lakes, instead of lands upon the shore of a navigable river, yet, under the rulings of the courts of Michigan, the owners of the shores of the navigable waters of the lakes have the

same rights to the bed of the lake adjoining the shore that the owner on a navigable river has to the bed of a stream. This was so held by that court in the same case; citing *Bay City G. L. Co. v. Industrial Works*, 28 Mich. 183, where it was said "that any use of lands under rivers, which is compatible with full enjoyment of the public easement, belongs to the upland to which it was originally appurtenant unless sold or granted separately so as to sever it. And in this state [that is, Michigan], whatever the law may be elsewhere, the same principles have been applied to lands fronting upon the lakes. *Rice v. Ruddiman*, 10 Mich. 139; *Pere Marquette Boom Co. v. Adams*, 44 Mich. 404." The reasoning of the court, therefore, applies with equal force to a conveyance of lands upon the banks of a navigable stream as to lands lying upon the shore of the lake or bay.

See, also, the following cases: *Braxon v. Bressler*, 64 Ill. 492; *Salter v. Jonas*, 39 N. J. Law, 469; *June v. Purcell*, 36 Ohio St. 396; *Ross v. Faust*, 54 Ind. 471, 477; *Woodman v. Spencer*, 14 Am. Law Reg. 414, 418; *Johnson v. Anderson*, 18 Me. 76; *Paul v. Carver*, 24 Pa. St. 207; *Rix v. Johnson*, 5 N. H. 520. These, and many other cases which might be cited, fully sustain the rules above stated as held by this court in regard to the grants of lands lying upon a street or navigable river.

If we examine this case in view of the facts which attended the execution of the deed in question, it seems to us they show a clear intention on the part of the grantors to convey all the rights they had in the bed of the stream in front of the lot conveyed at the date of such conveyance. The evidence derived from the description in the deed itself would tend strongly to show that a careful measurement had been made in order to fix a starting point on the south line of Milwaukee street, viz., 145 feet and 6 inches easterly from the easterly side of River street; and the evidence shows that measuring east from that point 46 feet it brings

the east line of the lot conveyed, at the north end thereof, within six inches of the water line of the river in an ordinary stage. There is also the other fact that when it became necessary to move the line four feet and more east in order to get sufficiently east of the mill referred to in the deed to satisfy the second call in the deed, no objection was made on the part of the grantors; and when they finally made the deed, after the building was erected, although retaining the false description contained in the original contract, they confirm the extension to the east by declaring that the land conveyed is "the same land on which the brick block lately built by the party of the second part and one Isaac N. Norton now stands." That building, at the date of the deed, was the west line of, and formed the west bank of, the river in front of the lot conveyed for one half of the length of the lot along said river; and the east line of the lot conveyed was, whether we take the measurements given in the original contract or those in the deed, very nearly coincident with the shore of the river,— if anything extending slightly into the river and beyond the shore.

Under the rule laid down in the cases above cited the intention to convey all the rights of the grantors in the bed of the stream, to the center thereof, is fairly inferred, and to overcome such presumption would require the production of evidence which is entirely wanting in this record. This presumption ought not to be overcome, except upon clear proofs, after the lapse of more than thirty years from the date of the deed; and especially so when the grantors have made no claim to the bed of the river in front of the conveyed premises during all these years.

Upon the evidence in the case we think the circuit court erred in finding that the plaintiff was the owner of the land in controversy. It becomes wholly unnecessary, therefore,

to discuss any of the other questions raised by the learned counsel for the appellants in their argument of this case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to that court to enter a judgment in favor of the appellants.

See note to this case in 27 N. W. Rep. 606.— REP.