Shauck, J.
. At the dates of the appropriation by the company and the subsequent grant of June 21, 1855, Mrs. Hall, the grantor, and the railway company, the grantee, were alone interested in what is now the subject of controversy. In the practical interpretation of its rights, acquired by the appropriation and the grant, the company took actual possession not only of the bank of the stream but of so much of the river as might be necessary to reach the established dock line at a depth of water of nine feet.
By the deed of September 10, 1869, Platt et al. acquired no title to the premises in controversy, for they were expressly excepted from the operation of the deed. Not only so, but by the terms of the reservation or exception, the grantees were notified that the grantor had, by a former conveyance, granted to the company the premises now in controversy. ■
The exception was not of “so much of -tract 11 as the railroad company now occupies,” but it was of “that portion of tract 11 which lies north *264 westerly of the river road, the same being now in possession of the railroad company.” This was express notice to the grantees that the company was in possession not only of the bank of the stream but all that portion of tract eleven which lay between the bank and the central thread of the stream.
On April 13, 1874, when the defendants in error received from Mrs. Ha'll the quit-claim under which they now assert title,'they found that the company had extended its docks over the.disputed premises to the newly established dock line. This had been done in the assertion' of the rights acquired by virtue of the appropriation and the deed of June 21, 1855, and with the acquiescence of Mrs. Hall to whom these parties now look as the common source of title.
The defendants in error took nothing by the quit-claim, because, not only the terms of their former deed, but the actual possession of the company, affected them with notice of the rights now asserted by the company, which rights their grantor could not then contest, since she had acquiesced in the company’s possession continuously from the date of the appropriation.
But from a consideration of the rules which prevail in the construction of grants of this character, we think the premises in controversy passed to-the company by the terms of the deed of 1855. It is true of that 'deed, as well as of the previous-proceedings to appropriate, that the Maumee river was not named as the boundary of the lands appropriated or conveyed. But by the strictest construction that could be placed upon the deed it conveyed not only the land upon the bank of the stream, but all that lay between the water’s edge *265 and the original dock line projected where a depth of nine feet of water was available for the purposes of navigation. The terms oh the grant do not admit of any broader claim on behalf of the grantor than that she did not expressly convey to the central thread of the stream. If title to the subaqueous lands, lying between the former and present dock lines, remained 'in her, it was by virtue of a presumption operating in her favor, notwithstanding the location of the lands expressly granted, .the obvious -purposes of the grant and the limited and incidental use of which alone the lands in controversy are susceptible.
The lands were acquired by the company for landing, dock and terminal purposes. That these purposes were within the contemplation of all the parties is indicated by the location of the lands upon a navigable stream and the express grant of that portion of the stream which was necessary to make the grant available for that purpose.
The ground in controversy is insusceptible of absolute and unqualified dominion, being incidental to the shore and subject to the public right to navigate the stream. Because of the permanent character of the riparian and public rights involved, the case is broadly distinguishable from those of grants bounded on streets and highways which may be abandoned and their sites thus restored to a condition in which they may be subject to absolute and unqualified dominion. For the same reason the case is distinguishable from those of grants of lands bounded by swamps, ponds and lakes that are not navigable and are subject to drainage. The use of the stream for the purpose of navigation was not only within the contemplation of the parties to the deed from Mrs. *266 Hall to the company)", but it was the principal and most obvious element of the value of the lands expressly granted.
These considerations would seem to justify the presumption that a g’rant of this character is to the central thread of the stream unless apt terms are employed to limit it.
And such appears to be the settled view of the courts of the country. Well considered cases in which this doctrine is held are Gavit v. Chambers, 3 Ohio, 496; Walker v. Board of Public Works, 16 Ohio, 543; June v. Purcell, 36 Ohio St., 396; Watson v. Peters, 26 Mich., 508; Luce v. Carley, 24 Wend., 451; Norcross v. Griffiths et al., 65 Wis., 599; Yates v. Milwaukee, 10 Wall, 497; County of St. Clair v. Lovingston, 23 Wall, 46.
To the application of this doctrine it is quite immaterial whether the .stream be named as a boundary of the lands granted or there be a description by courses and distances from a fixed monument whereby a line is established coincident with the stream. The doctrine regards the substance of the grant and not its form. Watson v. Peters, County of St. Clair v. Lovingston.
It is true that the common law regarded only those streams as navigable which are subject to the ebb and flow of the tides; and, in this view, the difference between riparian and littoral titles becomes unimportant, since they alike terminate at the water’s edge, the title to the residue of the alveus being in the public. While this view has been taken in some of the American cases, it cannot be regarded as the view generally received. Nor could it avail the defendants in error. The manifest result of these cases is that riparian and aivean rights are inseparable, whatever may be *267 the nature or extent of those rights. Al vean rights appertain to the riparian title and do not depend upon title to the subaqueous land.'. That such rights are incapable of severance from the riparian title to which they are incident was distinctly held in Lake Superior Land Co. v. Emerson, 38 Minn., 406. The conclusion reached in that case was adversely criticised by the same court in Hanford v. St Paul & Duluth R. R. Co., 43 Minn., 104, where it was considered that the rights may be severed if they are of such a nature that they may be enjoyed separately from the adjacent land to which they were originally appurtenant. It was accordingly held that submerged lands lying between the high land upon the shore and the line of navigation might be severed from' such high land; and that conclusion would result from the consideration that such submerged lands, being susceptible of reclamation without interference with public rights, might become the subject of the riparian title to which access to and use of the navigable waters would attach as an incident. But it was not there held that one may own thatwhich he cannot enjoy.
Since a plaintiff in ejectment must recover, if at all, by virtue of his own title, the contention of the defendants in error would not be aided by the conclusion that the lands in controversy are incapable of private ownership.
Confining ourselves to the requirements of the ease, we conclude that the lands in controversy passed to the plaintiff in error by the deed from Mrs, Hall because they were not by clear and apt terms excepted from its operation, and for the additional reason that, it being an express grant of her lands to the line of navigation, with all the *268 privileges and appurtenances to th e same belonging, the right asserted by the grantee is necessary to satisfy the express terms of the deed. Gould on Waters, section 179; Wood on Nuisances, section 491; Morgan et al. v. Mason, 20 Ohio, 402.
The views expressed in Lembech v. Nye, 47 Ohio St., 336, were not intended to have, and cannot have, any application to a case of this character. The lands there in controversy lay under water that was not navigable. By the clear terms of the syllabus the case was limited to lands thus situated; and in the principal opinion prominence is given to the consideration that the lake there in controversy was susceptible of private ownership, and the views here expressed were recognized as controlling in cases of navigable streams.
1 It is not necessary to consider the evidence offered by the plaintiff in error, in support of its plea of estoppel, as the right for which it contends is fully established by the stipulations.
Judgments of the Circuit Court and Court of Common Pleas reversed, and judgment for plaintiff in error.