## DUTTON v. VIERLING.

(Court of Civil Appeals of Texas. Austin. May 29, 1912. On Motion for Rehearing, Nov. 27, 1912. Rehearing Denied Dec. 18, 1912.)

### On Motion for Rehearing.

1. WATERS AND WATER COURSES (§ 89*)—BED OF STREAM—BOUNDARIES—INTENT OF GRANTOR.

Although a grant may call for marked corners upon the bank of a nonnavigable stream, and for a line or lines between such corners which do not correspond with the center of the stream, yet the boundary line extends to the center of the stream unless there is a clear intent that the grantor wished otherwise.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 91, 92, 107; Dec. Dig. § 89.*]

---

2. BOUNDARIES (§ 43*) — JUDGMENT — CONSTRUCTION—FIELD NOTES.

Where a judgment gives to a certain party a tract of land, and in describing it used the same field notes that were used in a survey made many years before, the construction thereof as to boundaries will be the same as though the field notes were contained in a voluntary deed.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 208; Dec. Dig. § 43.*]

Appeal from District Court, McCulloch County; John W. Goodwin, Judge.

Action between M. C. Dutton and G. W. Vierling. Judgment for the latter, and the former appeals. Affirmed on motion for rehearing.

F. M. Newman, of Brady, for appellant. J. E. Shropshire, of Brady, for appellee.

### Findings of Fact.

KEY C. J. The only issue involved in this suit is that of boundary. In 1889 a patent was issued to appellant to 160 acres of land. Prior to 1904 appellant brought suit for this 160 acres against Oscar Thompson. On May 2, 1904, judgment was rendered in favor of plaintiff in that suit for the land sued for less 9.733 acres, for which judgment was rendered for the defendant Thompson. Said 9.733 acres is described in said judgment as "beginning at a rock mound in the south line of said 160 acre tract 481.4 vrs. west of its S. E. corner, from which an L. O. 12 inches bears S. 16°31′ W. 105 vrs.; thence north 522.72 vrs. to pecan 12 in. dia. marked # standing on south bank of Brady creek, thence S. 79°25′ east down Brady creek 111.28 vrs. to a stake, from which a pecan 7 in. dia. bears S. 14 W. 12½ vrs.; thence S. 499 vrs. to stake; thence W. 109.62 vrs. to place of beginning." Appellee claims title from Thompson under this judgment. There is no dispute as to the location of any of the corners described in said judgment, except the northwest corner. The pecan tree called for in said judgment is found and identified by the # marked on it at the proper distance from the southwest corner of said 9.733-acre tract, standing on the sloping bank of said creek, 78 feet north of where the slope begins, and 16 feet south of the water's edge. Between this marked tree and the water's edge there is another large pecan tree six feet nearer the water. Running from the pecan tree marked # the course called for there are other trees between the line and the water for the first 100 feet, at which point the line thus run is 13½ feet from the water. Continuing said line it enters the water at 192 feet. Continuing the course and distance called for places the northeast corner in about the middle of the creek bed below a large and deep hole of water in front of this tract down to 192 feet from said marked pecan tree. The bearing tree called for the northeast corner is gone, and said corner is found by running S. 79° E. from said marked pecan

tree course and distance as called for in the field notes of said tract. The creek is usually dry at the point where the northeast corner is located, but the hole of water above referred to is permanent.

Upon the uncontradicted facts above set out, the trial court, no jury having been demanded, rendered judgment for appellee, from which we quote as follows: "And it is ordered, adjudged, and decreed by the court that the north line of said 9.733-acre tract as above described is not restricted to call for course and distance in running from the pecan tree at its northwest corner to the stake called for at its northeast corner, but that said line extends to the middle thread of Brady creek, and that the call in said line for the south bank of Brady creek means the center of Brady creek, and that the true and correct north boundary line of said 9.733-acre tract is a line beginning at a point in the center thread of the stream of Brady creek, due north from said pecan tree marked # standing on the south bank of Brady creek, called to be the northwest corner of said 9.733-acre tract, and running thence in an easterly direction down the center of Brady creek about 111.62 varas to where it intersects the meridian line running north and south along the east boundary of said 9.733-acre tract."

### Opinion.

It will be seen from the foregoing findings of fact that the issue in this case is the proper construction of the calls in the judgment in the case of Dutton v. Thompson, with reference to the location of the northwest corner of said 9.733-acre tract.

There is a general rule in reference to the location of boundary lines that the footsteps of the surveyor who made the original survey are to be followed, if they can be ascertained. In this case they can be ascertained with certainty. There is no dispute as to the southwest corner. That is found just where the original surveyor placed it. Beginning at this corner and running north the distance called for it in the field notes, we find and identify with absolute certainty the marked pecan tree called for as the northwest corner of the Thompson 9.733-acre tract.

But there is one exception to following the footsteps of the surveyor in establishing the boundaries of a survey, and that is where the surveyor ran the line to the bank of a stream and marked bearing trees to identify the place on the bank of the stream where he stopped, so that we may identify such place with certainty. Nevertheless, in most instances, the corner of the tract surveyed by him will not be the place on the bank where he stopped, but the center of the stream, and where he actually surveys from the place on the bank where he stopped to another place on the bank of said stream above

or below, and calls in his field notes to run up or down the stream to such other place, the boundary line will not be where he actually ran from one such corner to the other, but it will be the center of the stream. This rule was applied to this case by the learned judge who tried it. But this is a rule of reason, and not a rule of thumb. It is applied because from the necessity of the case. The surveyor usually could not go into a stream to make a corner, and he makes his corner on the bank, because it is desirable, where it can be done, to identify the place where he stopped; and such place is to be taken in most cases, not as the corner, but the place where the projected line enters the stream, and it is immaterial whether such place be at the edge of the water or at a convenient distance back on the line.

This rule is applied in public grants for the reason that it is the policy of the government to ultimately grant all of its lands to individuals. Where streams are made the boundaries of surveys, it is in order that the owners on each side may have access to the water; and it is unreasonable to suppose that the government intended to reserve the narrow strip of land between surveys covered by nonnavigable streams. For a like reason the rule usually applies to private grants.

But the rule that the footsteps of the original surveyor must be followed, and the rule that the call for the bank of a stream will be construed to extend to the middle of the stream, are subordinate to another rule of law, and that is that every contract is to be so construed as to carry into effect the intention of the contracting parties. The purpose of all rules of construction is to carry into effect this primary rule of law. Every written instrument must be construed by its own language, read in the light of the surrounding circumstances. In this case appellant was formerly the owner of the land upon both sides of the creek. She is still such owner, unless the judgment in Dutton-Thompson Case vested title in Thompson to the middle of the stream. To determine whether or not it did so, we must look to the language of such judgment, read in the light of the surrounding circumstances.

Appellee asserts that, where a private grant is bounded by a nonnavigable stream, it will pass title to the center of the stream. True; but to say that, therefore, the appellee should recover in this case is to assume the very point in issue, viz.: Is the creek the north boundary line of the tract recovered by Thompson? It is not so stated in said judgment. Had the call been for a stake on the south bank of the creek, and thence down the creek with its meanders to another point on the south bank of the creek, under the adjudicated cases, we would be compelled to hold that the calls carried the boundary line to the center of the stream. In some cases it has been held that a call down or up a stream means with the mean-

ders. This would be so where there were a number of calls intended to point out the course of the stream in its meanders. To hold that the calls in the Thompson judgment extended the west line to the center of the creek is to arbitrarily enforce the presumption that a call for a corner on the bank of a stream will extend the call to the center of the stream where the reason for such presumption does not exist. Said judgment shows upon its face that the land therein described was actually surveyed at some time prior to the entry of said judgment. The evidence shows that the pecan tree called for as the northwest corner of the Thompson tract marked # has been thus marked for at least 15 or 20 years. The calls in the judgment show that this survey was made with unusual particularity. Its beginning corner is identified by its distance from the original southeast corner of the 160-acre survey of which it is a part, and also by a bearing tree. The call is thence north 522.92 varas. It is not usual for calls in distances to be stated more accurately than one-fourth of a vara. In rare instances calls are made to the tenth of a vara, but here the call in a line over 500 varas long is to the hundredth part of a vara. Calls for course are seldom more accurate than to one-fourth of a degree; but here the call for the second line is south 79°25′ east. Calls for quantity in surveys are rarely made for a less fraction than tenths, but here the calculation is carried to the thousandths. The call for the west line is "north 522.72 vrs. to pecan 12 in. dia. marked #." This tree is found and identified. The plain language of the field notes make this the northwest corner. Why should it not be so held? It is true this tree is further described as standing on the bank of the creek. The surveyor did not stop here because he could go no further. He did not stop where the bank began to slope. That was 78 feet farther back. He •could have gone 16.8 feet further before reaching the water's edge. He did not stop at this tree because it was the last place where he could have a permanent mark on the line. There was another large pecan tree 6 feet nearer the water. It may be said that 6 feet or even 16.8 feet to the water's edge would not have amounted to much in the area; but we think it is worthy of consideration, where the length of the line is given to $1/100$ part of a vara, and the area to the $1/1000$ part of an acre. The seventh finding of fact made by the court is as follows: "I find that the pecan tree called for as standing on the bank of Brady creek, and marked # is on the ground, and that it is the corner of said 9.733-acre tract." We do not think that this finding of fact will sustain the judgment in this case in the middle of the creek 16.8 feet, plus one-half the width of a large hole of water north of said tree.

One of the rules of construction which aids the rule that a line calling for a non-navigable stream as a boundary will be held to extend to the center of the stream is that the language of a grant will be construed most strongly against the grantor; and, in view of the general prevalence of said rule of construction, if a grantor does not so intend, he could and should protect himself against such rule by expressly declaring in the grant that it is not the purpose of the grantor to convey any portion of the stream. This rule cannot be applied in this case, for the . reason that the judgment in favor of Thompson was not a voluntary grant on appellant's part, but it took the land awarded to him from her and against her will. That judgment is res adjudicata in her favor as to all of said 160-acre survey, except the 9.733 acres described in said judgment, and that exception and the adjudication of that tract to Thompson was not equivalent to a voluntary grant by appellant.

For the reasons herein given, the judgment of the trial court is here reversed and rendered so as to establish said pecan tree as the northwest corner of said 9.733-acre tract, and the north line of same a line run from said tree north 79°25′ east to intersection of the east line of said grant.

Reversed and rendered.

### On Motion for Rehearing.

This case was reversed at the last term of this court, and appellee's motion for rehearing was brought over to this term. After careful consideration of that motion, we have reached the conclusion that the case should not have been reversed, but that the judgment of the trial court should have been affirmed.

[1] It is a well-settled general rule of law that, when a tract of land is bounded by a nonnavigable stream, the boundary line extends to the center of the stream unless it is made clearly to appear that it was the intention of the grantor that such boundary should not go to that extent, and should be fixed other̤.ᵗ e. And this is true, although the grant may call for marked corners upon the bank of the stream, and for a line or lines between such corners, which do not correspond with the center of the stream. Bond v. Railway Co. et al., 15 Tex. Civ. App. 281, 39 S. W. 979; Muller v. Landa, 31 Tex. 271, 28 Am. Dec. 529; Risien v. Brown, 73 Tex. 139, 10 S. W. 661; Railway Co. v. Schurmeir, 7 Wall. 272, 19 L. Ed. 78; Rhodes v. Whitehead, 27 Tex. 304, 84 Am. Dec. 631; 5 Cyc. pp. 895–898; 4 A. & E. Ency. Law, p. 831; Brown v. Huger, 21 How. 305, 322, 16 L. Ed. 128, 130; Jones v. Soulard, 24 How. 41, 16 L. Ed. 608; City of St. Louis v. Rutz, 138 U. S. 243, 11 Sup. Ct. 337, 34 L. Ed. 948; St. Clair County v. Lovingston, 23 Wall. 46, 69, 23 L. Ed. 62; Runion v. Alley (Ky.) 39 S. W. 849. In many of the cases the intermediate lines called to run with the meanders of the stream, or as binding upon it. But in some cases, and especially in Brown v. Huger, supra, it has been held that the expressions "down the stream" and "up the stream" in the particular cases were equivalent to saying "with the meanders of the stream." In the present case, as pointed out in our former opinion, the field notes bear upon their face certain evidence tending to take this case out of the general rule; but, after a careful reconsideration and further examination of the authorities, we are not prepared to say that they render it manifest, and show with that degree of certainty required by the rule referred to that this case should be taken out of the first part and placed within the latter part of that rule. The proof does not show when the survey in question was first made, but its field notes are contained in a deed executed by Oscar Thompson and wife to R. J. Carroll November 15, 1898; and it was also shown that the suit of Dutton v. Thompson was filed in 1887, and the judgment rendered in that case in describing the land in question refers to it as "the land described in defendant's answer as follows," and then sets out the field notes in question. So it is probable that the original survey was made prior to 1887; and that fact is of some importance because in the trial of this case testimony was presented tending to show that the pecan tree marked as the northwest corner was at the time the original survey was made considerably nearer the water's edge than it is now. W. P. Doty, the county surveyor who went upon the ground and ran the line in question according to course and distance while the case was being tried, testified: "I know the creek bears to the south there. There is something of a curve. I know that the earth is washed in along this line. It goes in further north than it was when I was there the other time. It is washing in and filling it. There is an accretion taking placing next to this bank opposite to this tree and along opposite to the defendant's land. The creek is washing out on the north side and filling in on the south side, especially this upper part of it. On the north bank of the creek I don't know whether it is washed off there or not. That is a perpendicular bank, and I don't know, it might be digging into that bank. I noticed that there was a perpendicular bank. It seems to be filling in on this side." He also testified that in running the line from the pecan tree he reached the water at a distance of 192 feet. How far the line went into the water, and how far it extended before passing out, was not shown.

W. M. Strickland testified that he had been living on the Thompson tract about five years, and had known it ever since 1881. He further said: "I have noticed that creek since I have been down there as to the formation of the dirt. Since I have been down

there the creek next to me and next to Mr. Vierling's tract of land has been filling in right sharply on the south side. It cuts out a little on the north side. I have noticed the trees on the bank of the creek on the north side, and one or two there are pretty near undermined and the roots washed from under them. On the south side the dirt is depositing, and on the north side it is cutting away. You might say that creek has built up since I have been there from that wire fence, at least ten feet along there, because that creek used to cut right along by that big tree, water used to stand right along by it; that is, the tree standing just north of the marked tree. I have seen the water there about that tree many a time. I have seen the water run over the roots of the trees on the top of that bank. According to my best knowledge, when I first knew that pool, the water stood about six feet right in the center. The water stood about flush with the roots of those trees that run along there by that deposit, stood right close to them."

J. E. Goodson gave similar testimony as to the stream washing out on the north side and filling in on the south side. The testimony referred to tends to show that at the time the original survey was made the line called for by course and distance extending from the pecan tree was considerably nearer the water's edge when the surveyor reached the tree referred to than it was when the case was tried; and, if such was the case, that line must then have reached the water sooner and extended further into it than it does now. In fact, it may have left what was at that time considered an infinitesimal portion of the soil on the north side of the line, and that fact would tend to show that the survey was intended to border upon the stream. And, if such was the intention, it would seem that a deed, or any other instrument intended to pass title by the use of the field notes then made by the surveyor, should be held to make the center of the stream the boundary line. In Norcross v. Griffiths, 65 Wis. 599, 27 N. W. 606, 56 Am. Rep. 642, it was held that where land deeded by metes and bounds includes the bank of a river, although no reference is made to the river, it will be presumed that the intention was to convey to the middle of the stream. The opinion in that case is elaborate, and refers to and discusses many cases, and we quote as follows from that opinion: "The basis of the claim rests upon the fact (and as I think that fact alone) that in the deed of conveyance to Samuel D. Smith the boundaries of the land conveyed are exactly described by metes and bounds, no reference whatever being made to the river, and therefore it is claimed that nothing passed by the deed outside the boundaries particularly described in the deed. On the other hand it is claimed by the learned counsel for the appellants that, as the evidence clearly established the

fact that the boundaries mentioned in the deed do in fact include the whole of the banks and shore along the river for the whole length of the lot conveyed, there arises a presumption that the grantors intended to convey, and did convey, all their right to the bed of the stream in front of the lands described in the deed to the middle of such stream, and that such presumption can only be rebutted by an actual reservation in the deed, or by the production of such facts and circumstances in evidence attending the making of the conveyance as clearly show an intention to limit the grant to the exact boundaries fixed by the description in the deed. After a careful consideration of the very able and exhaustive arguments of the counsel for the respondent, and of the authorities cited by them in their briefs, as well as the arguments and authorities presented by the counsel for the appellants, we are clearly of the opinion that, so far at least as this court has spoken upon the subject, it has adopted the rule contended for by the counsel for the appellants; and that upon the face of the deed to Samuel D. Smith, and the evidence showing the location of the land described therein, it must be held that the grantee, Smith, took the bed of the stream to the center thereof, or so much thereof as the grantors owned when said deed was executed."

In St. Clair County v. Lovingston, supra, the Supreme Court of the United States said: "It may be considered a canon in American jurisprudence that where the calls in a conveyance of land are for two corners at, in, or on a stream or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary unless there is something which excludes the operation of this rule by showing that the intention of the parties was otherwise."

[2] One of the chief difficulties that we have encountered in this case is the fact that one of the links in appellee's chain of title is not a voluntary grant or deed, but is a judgment rendered against appellant, which judgment, in effect, awarded to Oscar Thompson, one of appellee's vendors, what may be designated as the Thompson tract of land, and described the north boundary thereof in the same way that it had been described in the original survey, which, as before said, was probably made prior to 1887. The suit in which that judgment was rendered involved the title to a tract of 160 acres of land sued for by Mrs. Dutton; and, as she recovered all except a small tract awarded to Thompson, it is evident that the court knew that but for the title asserted by Thompson Mrs. Dutton owned the entire 160-acre tract; and when, in adjusting the relative rights of the parties, the court in its judgment used the same field notes that were used when the survey was originally made, it is not clear to the writer that the same rule of construction does not apply that would be ap-

plicable if the same field notes and description were contained in a voluntary deed. Undoubtedly this would be true if the rule of construction referred to rests upon public policy to prevent harrassing lawsuits concerning small strips and gores of land, as held by Judge Redfield and by the Supreme Court of Wisconsin, as is disclosed by reading Norcross v. Griffiths, supra. But what is here said is not intended to commit this court to the doctrine there announced concerning the foundation of the rule. What we hold in this case is that, conceding that the judgment should be so construed as to ascertain where the court intended to place the line in question, as the court merely adopted a description given in a survey made many years before, which survey does not clearly show upon its face that it was not intended that the north line should go to the middle of the stream, we are not prepared to say that the trial court committed error when it held that such was the intention. We may still doubt the proposition that it was originally intended that the middle of the stream should constitute the boundary; but, inasmuch as the general rule referred to authorizes that construction, unless it clearly appears that such was not the intention, we do not feel authorized to hold that the trial court committed error in the construction placed upon the judgment.

For the reasons stated, the motion for rehearing is granted and the judgment of the court below is affirmed.

Rehearing granted, and judgment affirmed.